## GALVESTON, H. & S. A. RY. CO. v. SPARKS.

(Court of Civil Appeals of Texas. San Antonio. Dec. 17, 1913. Rehearing Denied Jan. 14, 1914.)

1. CARRIERS (§§ 148, 159*) — DAMAGE TO FREIGHT—WHAT LAW GOVERNS.

The federal, and not the state, statutes control in fixing a railroad company's liability on an interstate shipment, and hence a provision in the contract of shipment requiring notice of damage within a certain time as a condition to suing therefor will be sustained, if reasonable, not being prohibited by the federal statutes.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 650, 668–671, 686, 699–703½, 711–714, 718, 718½; Dec. Dig. §§ 148, 159.*]

2. CARRIERS (§ 62*)—CONTRACT FOR SHIPMENT—FRAUD.

If a contract for the shipment of freight was procured by the carrier by fraud, it was not binding upon the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 195–206½; Dec. Dig. § 62.*]

3. CARRIERS (§ 62*)—FREIGHT—VALIDITY OF CONTRACT.

After goats shipped by freight had been loaded, and the train was about to start, the railroad officials presented to the shipper's agent written contracts, and requested him to sign them, and such agent, without knowing their contents, or having time to read the contracts, signed them, believing them to be merely for use in transporting him with the shipment. The contracts were long, and printed in small type, with provisions written across the printing in several places. *Held*, that the shipper was not bound by the printed contract, if it was different from the verbal contract of shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 195–206½; Dec. Dig. § 62.*]

4. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

An instruction, in an action for damages to a shipment of goats, fixing plaintiff's measure of damages at the difference in the market value at the point of destination, if properly transported, and their market value in the condition in which they actually arrived was on the weight of the evidence where the evidence made it a jury question whether the written contract fixing the maximum value of the goats was valid; the effect of the charge being to indicate that the written contract should be ignored.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

5. CARRIERS (§ 218*)—FREIGHT—CONTRACT OF SHIPMENT—CONSIDERATION.

Recitals, in a contract for the shipment of live stock, showing that a lower rate had been given upon fixing a certain value upon the property showed a sufficient consideration for the contract of shipment at the rate fixed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

6. CARRIERS (§ 230*) — FREIGHT — ACTION FOR DAMAGE—CONFLICTING INSTRUCTIONS.

A special charge making the carrier responsible for overloading cars with live stock, if it supervised the loading, was conflicting with another charge exempting the carrier from liability for overloading the cars, if the contract so provided.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

7. CARRIERS (§ 62*) — FREIGHT — VALIDITY OF CONTRACT.

To invalidate the written contract of shipment, on the ground that the shipper's agent was compelled to sign it without knowledge of its terms, and believing that it was a mere "pass," the evidence must show that the agent was compelled to sign it without knowledge of its contents, and without being permitted time in which to read it, or having his attention called thereto.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 195–206½; Dec. Dig. § 62.*]

8. EVIDENCE (§ 445*)—MERGER OF ORAL INTO WRITTEN CONTRACT.

If a verbal contract of shipment was partly executed by loading the stock when the written contract was presented to the shipper, the verbal contract would control, unless the shipper afterwards assented to the terms of the written contract; the rule that prior negotiations are merged into a subsequently executed written contract not applying.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2052–2065; Dec. Dig. § 445.*]

9. CARRIERS (§ 229*) — FREIGHT — ACTION FOR DAMAGES—MEASURE OF DAMAGES.

One suing for injury to a shipment of live stock en route was not required to allege or prove a measure of damages where the written contract relied on, if valid, fixed a measure of damages, since, if it was not valid, the law would fix the measure of damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

10. TRIAL (§ 191*) — INSTRUCTIONS — WEIGHT OF EVIDENCE.

A requested charge was properly refused, in an action against a railroad company for injury to live stock en route, which assumed that the written contract of shipment should be considered in determining the measure of liability, though there was evidence tending to show its invalidity.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

Appeal from Uvalde County Court; J. F. Robinson, Judge.

Action by J. M. Sparks against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, G. B. Fenley, of Uvalde, W. B. Teagarden, of San Antonio, and Claude Lawrence, of Uvalde, for appellant. L. Old and L. E. Lanier, both of Uvalde, for appellee.

FLY, C. J. Appellee sued for and recovered damages in the sum of $428.32, alleged to have accrued by the negligence of appel-

lant in the transportation of certain goats from Uvalde, Tex., to Don Luis, Ariz. There was a trial by jury resulting in a verdict and judgment for appellee in the sum mentioned.

[1] The first and second assignments of error complain of exceptions being sustained to that part of the answer setting up a clause in the contract which provided that no suit should be sustained unless notice in writing of the loss or damage should be given within 90 days from the time that it occurred; it being claimed that it was an interstate shipment, and the validity of the contract should be tested by the federal laws, and not those of the state. The shipment was undoubtedly an interstate one, and therefore subject to federal, and not state, regulation. Being interstate commerce, the statutes of the United States must be looked to for guidance in fixing the liability of the carrier. The laws of Texas would not apply. It follows that, there being no provision in the federal statutes against inserting in the contract of shipment a stipulation for notice of loss or damage to be given within a certain time, no such provision can be applied to an interstate shipment. Missouri, Kansas & Texas Railway Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Railway v. Langbehn, 158 S. W. 244. The Supreme Court of the United States, in the case cited, said: "The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence."

In the case of Railway v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, the Supreme Court not only held that the Carmack amendment brought all contracts for interstate shipments under its authority, and withdrew them from the influence of state regulation, but also held that an agreement is valid and binding which fixes the value of the goods shipped. The court quoted with approval the following excerpt from Hart v. Railway, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717: "The distinct ground of our decision in the case at bar is that, where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations." The court also held that the valuation is based on the rate given the shipper, and that "he must take notice of the

rate applicable, and actual want of knowledge is no excuse."

[2, 3] While the statutes and decisions of the United States must be followed in this case, if brought into action by a contract of shipment, yet, if appellee pleads and proves that the contract was procured by fraud or duress, it was not binding, and there was no contract upon which to base a demand for notice of loss in a certain time, or to confine the losses within the limits of the valuation of the animals. It was pleaded by appellee that appellant, after the goats had been loaded, and the train about to start on its journey, presented written contracts to the employé of appellee, and told him to sign the same; that he did not know the contents of the contracts, and did not have the time to read the same, and signed them, believing that the contracts were merely to be used to pass him with the goats. He also pleaded that the contract was without consideration. The employé of appellee, T. B. Hutcherson, testified that he had never shipped any stock of any kind before, and knew nothing about shipping contracts; that, after the goats were loaded, and the train was ready to start, and had gone 200 or 300 yards from the depot near a water tank, the agent of the railroad company told Hutcherson to go with him to the depot and "sign up"; that he went and signed the contract, not knowing its contents, and ran to catch the train. He said, "They seemed to be in a hurry, and waiting for me, and ready to go." The contract was shown to be long, and printed in very small type, and the printing written across in a number of places. The printed contract was different from the verbal one under which the goats were delivered to appellant. Contracts made under like circumstances have been held null and void. Railway v. Grant, 6 Tex. Civ. App. 674, 26 S. W. 286; So. Pac. Railroad v. Meadors, 104 Tex. 469, 140 S. W. 427. In the last case the Supreme Court held: "If the Southern Pacific Company received the horses for shipment, furnishing the cars for that purpose, without demanding any written contract of the parties, and, after the horses were upon the cars, and the train about to leave, the contracts were presented to the men in charge, or to the shipper, for signature, and if the shipper or the person who signed them did not know the contents of the contracts, and had no time for reading them, and signed them under these conditions * * * to secure the passes to attend the horses, such contracts would not be the contracts of the shipper, and the limitation which restricted the liability of the railroad company to damages accruing on its own line was not binding upon the shipper." The facts, as testified by appellee, bring it within the scope of the decisions cited.

[4] The charge complained of in the sixth assignment of error was upon the weight of

the evidence, as indicating to the jury that the contract was null and void. The validity or not of the written contract was the main issue, and yet it was not submitted in the charge of the court, but in a special charge requested by appellee, and the court went further in the face of the written contract fixing the maximum value of the goats, and instructed the jury to find for the difference in the market value of the goats at point of destination, had they been properly transported, and their market value in the condition in which they arrived at point of destination. To use that measure of damages alone was to ignore the written contract, and to indicate to the jury that it should be set aside. It cannot be said that the charge did not probably influence the jury. The jury had the right to pass upon the testimony of Hutcherson as to the facts connected with the signing of the contract, especially as it was shown that he did not show any desire to read the contract. The agent of appellant swore that he would have given Hutcherson time to read the contract if he had expressed any desire to read it. The court should have conditioned his measure of damages upon the finding by the jury that the written contract of shipment was null and void. If the contract was valid, a different measure of damages was applicable, namely, the one stipulated in the contract.

The court should also have instructed the jury that, if they found that the contract was valid, and found that the limitation named therein was reasonable, then they could not find in favor of appellee for any sum, unless the suit was instituted within the stipulated 90 days.

Appellee alleged that he delivered the goats to appellant, and that the latter received them, and placed them in its pens, and transported them. That created contractual relations between the parties, and the facts under which the written contract was executed were fully set forth in the supplemental petition, and formed a sufficient basis for proof of the facts. The seventh and ninth assignments of error are therefore overruled.

[5] There was a sufficient consideration for the execution of the written or printed contract, and, if valid in other respects, it could not be attacked on the ground of lack of consideration. Railway v. Carl, hereinbefore cited. In that case it is held that the taking of the lower of two rates was sufficient consideration for lessening the amount for which the carrier should be held liable in case of loss or damages. As said in that case: "The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied must be conclusive in an action to recover for loss or damage." We therefore hold that the trial court erred in not sustaining exceptions to that part of the supplemental petition which

162 S.W.—60

attempted to assail the validity of the shipping contract on the ground of want of consideration. Appellee cites several cases to the effect that, unless there is proof of a lower rate, there would be no consideration for the shipping contract; but it has been decided in Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, Railway v. Latta, 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed. 328, and Railway v. Miller, 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. 323, that the recitals in the contract were sufficient to show that a lower rate had been obtained by a certain value upon the property, and that it formed a sufficient consideration for the contract.

[6] In the first special charge requested by appellee and given by the court, appellant was charged with liability for overloading the cars, if it supervised the loading; then, in the second special charge, the appellant is exempted from liability for overloading the cars, if the contract so provided. There is an apparent conflict between the two charges which should be guarded against on another trial.

[7] The question of whether the contract was void under the facts was one to be submitted to the jury, and, in order to invalidate it, the evidence should clearly show that appellee's employé was compelled to sign without knowledge of its contents, and without being allowed time in which to inform himself of such contents. There must be evidence tending to show that the attention of the employé was not called to the terms and conditions of the contract, or that he was not given an opportunity to inform himself.

[8] If a verbal contract was made for the shipment of the goats, and it was partly executed at the time the written contract was presented, as by loading the goats on the cars, making up a train, and preparing for departure, the verbal contract would prevail, unless the shipper afterward assented to the terms of the written contract. The rule that prior negotiations are merged in a subsequent written contract would not apply to such a case. Bostwick v. Railroad, 45 N. Y. 712. In the Meadors Case the horses were brought to the depot under an agreement to ship them over certain lines. Cars were furnished, and the horses loaded upon them, after which the contracts were presented and signed. The court held that the facts were sufficient to warrant the trial judge in submitting "to the jury the question of whether there was an oral or implied contract on the part of the Southern Pacific Railroad Company to carry the horses."

[9] If there was no valid contract, the law fixed the measure of damages in this case, and if the written contract is valid and binding it fixes the measure of damages. Appellee was not compelled to allege or prove a measure of damages. The thirteenth assignment of error is overruled.

[10] The fourth special charge was properly denied. It assumed that the written contract alone was to be considered in the case, ignoring the facts tending to show its invalidity. The fourteenth assignment of error is overruled.

The fifteenth to the twenty-first inclusive are not meritorious, and are overruled.

For the errors indicated herein, the judgment is reversed, and the cause remanded.