GULF, C. & S. F. RY. CO. v. VASBINDER.
(No. 5387.)†

(Court of Civil Appeals of Texas. San Antonio. Jan. 6, 1915. Rehearing Denied Jan. 27, 1915.)

1. CARRIERS (§ 207*) — CARRIAGE OF LIVE STOCK—CONTRACTS—VALIDITY.

Where the agent of a carrier induced a shipper of live stock to sign a contract for shipment just as the train was starting, the contract, which the shipper did not understand, is invalid for fraud, though the shipment was an interstate one.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–239; Dec. Dig. § 207.*]

2. CARRIERS (§ 62*) — ORAL CONTRACT OF SHIPMENT—CARMACK AMENDMENT.

The Carmack amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592]) does not render invalid all oral contracts of shipment, but only those which are in conflict with the schedules and rates published by the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 195–206½; Dec. Dig. § 62.*]

3. APPEAL AND ERROR (§ 930*)—VERDICT— PRESUMPTIONS.

In an action for damages to a shipment of cattle, the jury having assessed a lump sum for cattle killed and other cattle injured, it cannot be assumed that for the cattle killed the jury awarded an amount greater than their value as shown by the proof.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. § 930.*]

4. APPEAL AND ERROR (§ 1068*)—REVIEW— HARMLESS ERROR.

In an action for damages to an interstate shipment of cattle, the court did not restrict the jury to the amounts specified in schedules filed with the Interstate Commerce Commission. The damages awarded, however, were much less than the maximum amounts specified in the schedules for the rate paid. Held, that the error was harmless, as the amount awarded was less than the amounts recoverable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

5. COURTS (§ 97*)—DECISIONS—PRECEDENCE.

The construction of a federal statute by the federal Supreme Court is binding on the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 329–333; Dec. Dig. § 97.*]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by W. E. Vasbinder against the Gulf, Colorado & Santa Fé Railway Com-

pany and others. From a judgment for plaintiff against the named defendant, it appeals. Affirmed.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. Swearingen & Ward and John H. Bickett, Jr., all of San Antonio, for appellee.

FLY, C. J. This is a suit, instituted by appellee, to recover damages to a certain shipment of 862 cattle from Pearland, Tex., to Foraker, Okl. It was alleged that the cattle were delivered for shipment to appellant; that after the cattle were loaded, and the train was ready to move, the agent of appellant required appellee to sign a contract, of whose contents he was ignorant, and to the terms of which he did not assent, and by which he was not bound; that the cattle were delayed en route, were roughly and carelessly handled, and many of them knocked down, bruised, and injured; that 21 of the cattle died of their injuries, and the whole shipment was depreciated in value. The damages were placed at $5,086.66. Appellant excepted generally and specially to the petition as to the allegations setting up an oral contract, and answered by general denial, and set up a written contract under which the shipment was made, which provided that appellee should give notice within 91 days after any loss occurred as a condition precedent to recovery, and denied that such notice had been given. It was also alleged that appellant had two rates to Oklahoma for the transportation of live stock, one being a rate at the carrier's risk and the other at a reduced rate under a contract limiting the liability of the carrier, and appellee shipped his cattle at the reduced rate, one of the conditions of which was that in case of loss payment should be made on the basis of the cash value of the cattle at the time and place of shipment, and not to exceed the value stated in the contract, which was $30 for each animal, and it was also provided that any suit for damages must be prosecuted within six months after the loss or damage occurred. The cause was tried by jury, and resulted in a verdict and judgment against appellant for $2,101.50. A verdict was rendered in favor of one of the connecting carriers sued with appellant, and the cause was dismissed as to another.

Appellee made an oral contract with appellant for the shipment of the cattle from Pearland, Tex., to Foraker, Okl. When the parol contract was made, a written contract was not mentioned; nor was it mentioned until the train was about to start. Appellee was not given an opportunity to read the contract. He did not know of any of the conditions or provisions in the contract. While signing the contract, the conductor was urging appellee to come and get on the train. Appellee was so hurried that he left his overcoat, and the train was moving when he boarded it. Appellee did not know that the paper he signed was a contract. All the papers signed by appellee were signed just as the train began to move, and he was ignorant of their contents.

[1] Contracts signed under similar circumstances to those hereinbefore stated have several times been declared null and void by the courts of Texas. Railway v. Meadors, 104 Tex. 469, 140 S. W. 427; Railway v. Grant, 6 Tex. Civ. App. 674, 26 S. W. 286; Railway v. Sparks (Civ. App.) 162 S. W. 943. If, as found by the jury, the written contract was procured by fraud, it was not binding on appellee, and the conditions as to notice and value of the cattle had no effect. The facts of this case bring it peculiarly within the scope and effect of the Meadors and Sparks Cases, and they must be conclusive, unless, as contended by appellant, a different rule is laid down by the Supreme Court of the United States.

If the written contract was not assented to by appellee, and his name thereto was procured by fraud, as the facts indicate, then it was not his contract, and could not be binding upon him. We cannot imagine the most exalted court in the land holding that a party will be bound by the terms of a shipping contract of whose contents he was ignorant, and with which he was not given time to acquaint himself, and yet that is the effect of the contention of appellant. We shall review the later decisions of the federal Supreme Court cited by appellant, and endeavor to show that there is no material conflict between them and the Texas cases herein cited.

[2] In the case of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, appellee had sued appellant for the full market value of a diamond ring shipped by him from Cincinnati, Ohio, to Augusta, Ga., and the defense of the express company was that the Interstate Commerce Commission schedule of rates showed that 25 cents should be the tariff if the package was of the value of $50 or less, and was 55 cents if the value was $125, and that the rate charged appellee was based on a value of $50. The court held that under the Carmack amendment of June 29, 1906, the federal government took exclusive possession of all interstate shipments; that the carrier is required to issue a receipt or bill of lading, and is made liable to the holder for loss, damage, or injury to his property; that inquiry as to actual value will not be permitted where the liability of the carrier is limited to the agreed value, where the receipt, as well as the published rates on file with the Interstate Commerce Commission, plainly show that the rate charged was based upon value, and that it will be presumed that the shipper knew that the rate was based upon the agreed value. To the same effect are the decisions in Railway v. Miller, 226 U. S. 513, 33 Sup. Ct. 155, 57

L. Ed. 323, Wells Fargo & Co. v. Neiman-Marcus Co., 227 U. S. 469, 33 Sup. Ct. 267, 57 L. Ed. 600, Railway v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, Railway v. Cramer, 232 U. S. 490, 34 Sup. Ct. 383, 58 L. Ed. 697, and Railway v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703. There is not a word or syllable in either of those decisions in conflict with the Texas cases.

Strong reliance, however, is placed by appellant on the case of Railway v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901, which was decided in April, 1914. In that case it was held, as in the other cases cited, that the exclusive rule on the subject of the liability of a railway carrier, under contracts for interstate shipments, is furnished by the Carmack amendment, and further that a special contract for an interstate shipment without limitation of the carrier's liability to an agreed value has no binding force, where the carrier's published tariffs on file with the Interstate Commerce Commission graduate the rates according to declared value, and limit the carrier's liability accordingly, since the shipper, as well as the carrier, is bound to take notice of the filed tariff, and so long as they remain operative they are conclusive as to the rights of the parties. It was held that an oral agreement could not supersede or set aside the degree of liability of the carrier as fixed by the schedule of tariffs. The court, after citing the cases on the subject, held:

"We regard these cases as settling the proposition that the shipper, as well as the carrier, is bound to take notice of the filed tariff rates, and that so long as they remain operative they are conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing. * * * To give to the oral agreement upon which the suit was brought, the prevailing effect allowed in this case by the charge in the trial court, affirmed by the judgment of the Supreme Court of the state, would be to allow a special contract to have binding force and effect, though made in violation of the filed schedules, which were to be equally observed by the shipper and carrier. If oral agreements of this character can be sustained, then the door is open to all manner of special contracts, departing from the schedules and rates filed with the Commission."

The opinion does not condemn all oral contracts, or all special contracts, but only those in conflict with "the schedules and rates published by the Commission." The opinion in the Sparks Case is not in conflict with the opinion in the Robinson Case, unless it be as to the measure of damages, which the Supreme Court holds is fixed by the schedules and rates filed with and published by the Interstate Commission.

[3] While the trial court followed the case of Railway v. Sparks, and did not limit the recovery to the amount named in the schedule of rates, in instructing as to the measure of damages, appellant made no effort to have the damages confined to the amount named in the schedule of rates, and the jury found for a less sum than that allowed by the measure of damages fixed by the schedule of rates. The whole attack of appellant on the charge of the court is based on the validity of the written contract. The special charges requested by appellant are all based on the written contract, and the schedule of rates and tariffs is not mentioned in them, and the schedule is not mentioned in the assignments of error, except in connection with the written contract. The case was tried upon the theory that the liability of the appellant was fixed and controlled by the written contract, and the schedule of rates was mentioned only as a mere incident to that contract. This conclusively appears from the proposition under the twelfth assignment of error, which assails that part of the charge fixing the measure of damages. That proposition is:

"If plaintiff was entitled to recover, then his recovery is limited by the terms and conditions of the bill of lading under which the shipment moved; and it was the duty of the court in submitting this issue to only submit the same as had been provided in the contract."

The same matter is kept in view in the thirteenth assignment of error, and in the fourteenth assignment of error the special charge set out does not require the jury to fix the damages as set out in the schedule of rates, but to absolutely find for appellant if the shipment was made on that schedule.

[4] However incorrect the measure of damages may have been as given in the charge of the court, still if the verdict of the jury did not exceed the damages which were sanctioned and permitted by the schedule of rates published by the Interstate Commerce Commission, appellant cannot complain, because it has suffered no injury from such error. The evidence showed without contradiction that appellee paid the freight rate of $69 per car, which was predicated upon a valuation for each animal shipped, not to exceed $50, and the highest valuation put upon the steers that were killed was $40 a head, and the highest damages to the cattle which were injured was $5 a head. The 21 cattle, at $40 a head, would be $840, and at $5 a head for the 841 cattle that were injured the damages would be $4,205; but the jury allowed only $1,261.50 for the injured cattle, if full proved value was allowed for the dead cattle. We cannot presume that the jury found the dead cattle to be worth more than the value that was proved, and, no matter what the true measure of damages may have been, appellant was not injured by the verdict.

[5] While in the Robinson Case there is no direct holding that, in the absence of a written contract, the schedule of rates published by the Interstate Commerce Commission shall control as to the measure of damages, that holding may be reasonably inferred from the language of the decision herein quoted. For if an oral contract is only condemned because in conflict with the schedule, it might be inferred that if in harmony

with the schedule it would be sustained. If this be a reasonable inference, it is certainly not based on the Carmack amendment, nor on the language of the schedule published by the Commission. In that schedule it is provided:

"The rates in this tariff apply on shipments of ordinary live stock, where contracts are executed by shippers on blanks furnished by the railroads, and are based on the declared valuation by shippers at the time contract is signed. * * * "

If there was no written contract executed, as the facts show there was not in this case, then there is nothing upon which to base the valuation of animals to form a measure of the damages. No such contract as that insisted upon by appellant, and which has probably been approved by the federal Supreme Court, could ever have been dreamed of by Senator Carmack when he drew the bill requiring the initial carrier in interstate shipments to issue a receipt or bill of lading to the shipper, and provided that such carrier should be liable "to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier" into whose hands it might come during its transportation. From being, as was intended by the statute, a measure of protection to the shipper, the law has become a shield and fortress for the railways of the country, by judicial interpretation. Those decisions of the federal Supreme Court, however distasteful they may be to state courts, must perforce be followed, as we have sought to follow them in this opinion. The federal statute was designed to give to the shipper the full amount of the loss inflicted upon his property by the carrier, and not such loss as might be fixed by the Interstate Commerce Commission, or by the ingenious and complicated contract drawn by a railway company. But it is so written by the court of last resort, and must be followed until further legislation shall grant relief.

The judgment is affirmed.