PANHANDLE & S. F. RY. CO. v. JONES.
(No. 866.)

(Court of Civil Appeals of Texas. Amarillo.
Dec. 11, 1915. Rehearing Denied
Jan. 26, 1916.)

1. CARRIERS ☞207 — CARRIAGE OF LIVE
STOCK—ACTIONS—RIGHT TO RECOVER.

As under the law existing before the Car-
mack Amendment (Act Cong. June 29, 1906, c.
3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S.
Comp. St. 1913, § 8592]) a shipper of live stock
might recover under a verbal contract, he may
thereafter recover under a verbal contract where
no valid written contract was made; the amend-
ment declaring that nothing should deprive the
holder of any receipt or bill of lading of any
remedy or right of action which he had under
existing laws.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 129–239; Dec. Dig. ☞207.]

2. CARRIERS ☞102—CARRIAGE OF LIVE STOCK
—CONTRACT.

At common law a shipper of live stock might
rely either on an oral contract or recover for
negligent delay where there was no contract.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 434; Dec. Dig. ☞102.]

3. CARRIERS ☞207—CARRIAGE OF LIVE STOCK
—ACTIONS—CONTRACTS.

Where the contract for an interstate ship-
ment of cattle was oral, but just before the train
started the shipper was required to sign a writ-
ten bill of lading which he did not have time to
read and could not have understood, the oral
contract was not supplanted; the contract con-
tained in the bill of lading not being mutual.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 129–239; Dec. Dig. ☞207.]

4. CARRIERS ☞228—CARRIAGE OF LIVE STOCK
—ACTIONS—CONTRACTS.

In an action for injuries to an interstate
shipment of cattle, where the carrier relied on a
contract made under authority of the Carmack
Amendment, claiming limitations of liability were
in consideration of a reduced rate, the carrier
has the burden of proving that the limitations
were reasonable and supported by consideration,
and were not a subterfuge to escape liability for
negligence.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 957–960; Dec. Dig. ☞228.]

5. APPEAL AND ERROR ☞1170 — INSTRUC-
TIONS—DEFECTS.

Where the charge as a whole fairly present-
ed the case, judgment will not be reversed on
account of technical defects.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4032, 4066, 4075, 4098,
4101, 4454, 4540–4545; Dec. Dig. ☞1170.]

Appeal from Lubbock County Court; E.
R. Haynes, Judge.

Action by J. O. Jones against the Panhan-
dle & Santa Fé Railway Company. From a
judgment for plaintiff, defendant appeals.
Affirmed.

Madden, Trulove, Ryburn & Pipkin, of
Amarillo, Roscoe Wilson, of Lubbock, and
Terry, Cavin & Mills, of Galveston, for ap-
pellant. Bean & Klett, of Lubbock, for ap-
pellee.

HALL, J. Appellee sued appellant railway
company to recover $850 damages alleged to
have been sustained as the result of delay in
the transportation of five cars of cattle ship-
ped from Abernathy, Tex., to Kansas City,
Mo. A trial resulted in a verdict and judg-
ment in appellee's favor in the sum of
$517.17.

Plaintiff alleged that about 2:30 o'clock p.
m., October 23, 1914, he delivered to defend-
ant 189 head of cattle, which were accepted
for safe and speedy transportation as a
through shipment from Abernathy, Tex., to
Kansas City, and that thereby defendant be-
came bound to transport said shipment with
reasonable speed and safety; that the cattle
did not reach Kansas City until 11:30 p. m.
October 26th; that the time consumed in
transportation was unreasonably long, by
about 24 hours; that said delays specified in
the pleading occurred en route, each alleged
to have been unreasonable; that the cattle
were placed in muddy pens and detained
there for an unreasonable time; that as the
result of such delays and detention there
was a decline in the market value of the cat-
tle to plaintiff's damage in the sum of $800.

Defendant answered by general and spe-
cial demurrers, special denial of each of the
material allegations of plaintiff's petition,
and by special pleas set up, among other
things, the following:

"(a) That such cattle were by it received, and
by it and its connecting carriers transported
from Abernathy, Tex., to Kansas City, Mo., in-
terstate, as common carriers of freight, by rail,
and in accordance with the provisions of a writ-
ten contract theretofore made and entered into
between plaintiff and defendants. (b) That
such contracts were made for the transportation

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of said cattle at the lower of two rates the carriers had caused to be filed with the Interstate Commerce Commission and duly published at which they could by law transport such cattle, which lower rate the plaintiff had accepted as the rate for the transportation of his cattle, the choice of the two rates being open to plaintiff, the higher being for transportation without limitation of liability, and the lower for transportation with the limitations specified in the contract. (c) That by such contract it was agreed, among other things, in substance: (1) That the stock were not to be transported within any specified time nor delivered at destination at any particular hour nor in season for any particular market; (2) that the company would stop for watering and feeding only at such stations as it had adequate facilities for feeding and watering, and that plaintiff should not confine his stock in the cars for a longer period than 28 hours without unloading for rest, feeding, and watering; (3) that in case of loss or damage from any cause for which the defendant might be liable payments should be made therefor only on the basis of the actual cash value at the time and place of shipment, in no case to exceed the valuation therein specified, which was for an ox, steer, or bull $50, for a cow $30, and for a calf $10 per head; (4) that in order that any loss or damage claims by plaintiff might be fully and fairly investigated, and the facts and nature of such claims and loss preserved beyond dispute and by the best evidence, and as a condition precedent to the right to recover any damages for any loss or injury to his stock during the transportation thereof, or at any time or place where the same might be loaded or unloaded for any purpose, or previous to the loading thereof for shipment, the plaintiff or his agent in charge should give notice of their claims therefor to some officer of the company or to the nearest station agent, if delivered to the consignee at a point beyond the company's road, to the nearest station agent of the last carrier making such delivery, before such stock should be removed from the place of destination or from the place of delivery, and before such stock should have been slaughtered or intermingled with other stock, and that plaintiff would not remove such stock from such station or stockyards until the expiration of three hours after the giving of such notice, and that a failure to comply with the terms of this clause in said contract in any respect should be a complete bar to any recovery of any and all such damages; (5) that such recitals and limitations upon the liability of the carriers were made in consideration of the lower of the two rates, which the shipper acknowledged that he had chosen, having had full opportunity to choose the rate at the carrier's risk, or limited liability at the rate chosen and stipulated in the contracts. (d) That, though the defendant and its connecting carrier had on their respective lines at each and all places where all said cattle were stopped or delayed in transit station agents and other officers and agents to whom such notice could and reasonably should have been given, and though the delivering carrier, the Atchison, Topeka & Santa Fé Railway Company, had such officers and agents at Kansas City to whom plaintiff could and reasonably should have given such notice, plaintiff wholly failed to give notice in writing of his claim for damages before such stock were removed from the place of destination or from the place of delivery, and before such stock was slaughtered or intermingled with other stock within the time and manner and form as required by such shipping contracts, the provisions of which are reasonable and just, so that plaintiff could and reasonably should have given such notice as he had contracted and agreed to do."

In addition to the demurrers and denials, plaintiff, by supplemental petition, replied to defendant's answer, among other matters alleging:

"That as a special answer herein plaintiff says that said cattle were received and transported by the defendant under a verbal contract of shipment made and entered into by and between plaintiff and defendant three or four days before said cattle were delivered to the defendant for shipment, and that by the terms of said agreement the defendant agreed for a valuable consideration to transport said cattle with reasonable speed and safety to the point of destination, as alleged in plaintiff's original petition."

"That, if it be true, as alleged by the defendant, that a written contract was issued by the defendant and entered into by the plaintiff, that the same was not binding, and was without consideration, and attained by fraud and under duress, as more particularly alleged herein; that after said cattle were delivered to and received by defendant company for shipment to Kansas City as previously agreed upon by verbal contract, as herein alleged, and after said cattle had been loaded on the train, and the same was steamed up and ready to leave the stock pens, and the plaintiff was ready to climb into the caboose and take his seat therein, for the purpose of accompanying said shipment, as he had the right to do, the agent of the company at Abernathy required and requested the plaintiff, before permitting said train to leave or the plaintiff to accompany the same, to sign an instrument at the office, which was located some several hundred yards from the stock pens, without explaining said instrument to plaintiff and without giving the plaintiff an opportunity to read the same, or to learn the contents thereof; that plaintiff was in ignorance of the contents of said instrument and of the nature thereof; that the plaintiff did not know, and did not have opportunity to know, that said instrument was a limitation of the company's liability, or that said instrument required the plaintiff to give notice of any kind, as alleged, by the defendant, or that said instrument varied from the verbal contract of shipment, and, in fact, did not understand and was not notified that said instrument was a contract of shipment, but supposed that the same constituted the plaintiff's 'pass' to ride on said train with his cattle; that plaintiff further says that he had never read any such instrument before, and did not know or understand the nature or purpose of such instrument; that he was deceived thereby and acted in ignorance of the nature or purpose of said instrument; that the agent at said place merely told the plaintiff that he must 'sign up' before the train left, in order to get his 'pass'; that, had the plaintiff known that said instrument was at variance with said verbal contract of shipment, he would not have entered into said written instrument, and would not have bound himself by the terms thereof; that the plaintiff further says that he was only allowed a minute in which to sign said instrument, and that the whole of said instrument was prepared and signed in only three or four minutes of time, and that, in fact, said instrument was very lengthy in form, consisting of a multitude of paragraphs in exceedingly small type, very difficult for the ordinary eye to read without considerable strain, all of which paragraphs impose on the shipper a variety of restrictions, limitations, and responsibilities, and concurrently exempt the company from many of the duties and liabilities of a common carrier for hire; that said instrument could not have been read by the plaintiff in less than one hour, and that the plaintiff could not have interpreted the contract thereof after reading, as the provisions of said instrument are couched in such language that only the skilled lawyer would be able to comprehend, and plaintiff further says that the first time that the plaintiff had an opportunity to see said contract, and that the first time same was offered to him, was after said train

was ready to go, when the agent of said company required plaintiff to sign, and that under such circumstances it was a physical impossibility for the plaintiff to become familiar with said instrument or to know the contents thereof, or the exceptions that the defendant now claims as an excuse for its negligent delay and damage to said cattle during the three or four minutes only allowed by the defendant."

By supplemental answer the defendant replied that at the time the shipment moved there were two freight rates in effect from Abernathy to Kansas City upon cattle, one of which was based on a valuation of $30 per head for each cow and $10 for each calf, and the execution of a release liability contract of shipment, as executed, by plaintiff, and alleged by defendant, and that the other was a higher rate upon shipments not so released, and the higher nonreleased was 20 per cent. per hundredweight higher than the released valuation rate, which two rates were evidenced by tariffs duly filed with the Interstate Commerce Commission and published according to law; that the plaintiff executed the written contracts pleaded by the defendant voluntarily and without misrepresentations or deceit, duress, fraud, or concealment on the part of the defendant or its agents, and paid the rate based upon such released liability contract and valuation; that the defendant, in consideration of the limited liability, terms, conditions, and stipulations contained in such contract, accepted the lower rate recited therein, etc.

The demurrers were all overruled and exceptions reserved.

[1-4] Under the first assignment of error the appellant contends that there can be no valid, verbal contract for an interstate shipment of live stock since the enactment of the Carmack Amendment, and that, where the carrier has duly filed tariffs and has caused the same to be published, providing for two rates applicable under different specified conditions to a shipment, and the shipper accepts from the carrier a bill of lading, specifying the lower of the two rates and the conditions of shipment so applicable thereto according to the published tariffs, such shipping contract and the tariff sheets become, by operation of law, the contract governing the shipment. The Carmack Amendment provides:

"That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing laws." U. S. Comp. St. 1913, § 8592, par. 11.

Under existing law appellee could sue and recover upon the verbal agreement, provided his proof warranted such recovery. Gulf, Colorado & Santa Fé v. Vasbinder, 172 S. W. 763; Barnes on Interstate Transportation, § 307. And he is entitled to recover even without an express contract. Hannibal Ry. Co. v. Swift, 12 Wall. 262, 20 L. Ed. 423. It is stated in the contract that the rate given under this contract is lower than the rate made by the railway company and connections for the transportation of stock at carrier's risk, and without limitation of liability. Appellee testified that he did not read the contract and did not know what was in it; and we held in the case of Pecos & Northern Texas Ry. Co. v. Stinson, 181 S. W. 526, that such a contract, signed under such circumstances, was not binding and mutual. It has been held in the case of Hovey v. Tankersley, 177 S. W. 153, that the burden of proof, under the Carmack Amendment, was upon the carrier to show that a provision in its bill of lading is reasonable and supported by a consideration. I. & G. N. Ry. v. Rathblath, 167 S. W. 751. See, also, C., R. I. & G. v. Whaley, 177 S. W. 543; C., R. I. & G. v. Dalton, 177 S. W. 556. No consideration is shown by the appellant for the stipulations exempting it from such liability. Cau v. Texas, etc., Ry. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053; York v. Illinois Central R. Co., 3 Wall. 107, 18 L. Ed. 170; Arthur v. Texas, etc., Co., 204 U. S. 505, 27 Sup. Ct. 338, 51 L. Ed. 590; Charnock v. Texas, etc., Ry. Co., 194 U. S. 432, 24 Sup. Ct. 671, 48 L. Ed. 1057. The Interstate Commerce Commission, in construing section 20 of the Carmack Amendment (Act Cong. Feb. 4, 1887, c. 104, § 20, 24 Stat. 386, as amended [U. S. Comp. St. 1913, § 8592]), uses this language:

"If a rate is conditioned upon the shipper's assuming the entire risk of loss, the condition is void as against loss due to the carrier's negligence or other misconduct.

"If a rate is conditioned upon the shipper's agreeing that the carrier's liability shall not exceed a certain specified value, (b) the stipulation is valid, even when the loss is due to the carrier's negligence and, if the shipper has himself declared the value expressly or by implication, the carrier accepting the same in good faith as the real value and the rate being fixed in accordance therewith.

"(c) The stipulation is void as against loss due to the carrier's negligence or other misconduct if the specified amount does not purport to be an agreed valuation, but has been fixed arbitrarily by the carrier without reference to the real value.

"(d) The stipulation is void as against loss due to the carrier's negligence or other misconduct, if the amount specified while purporting to be a valuation is, in fact, purely fictitious, and represents an attempt to limit the carrier's liability to an arbitrary amount.

"The carrier must not make use of its released rate as a means of escaping liability for the consequences of its negligence, either wholly or in part." Barnes on Interstate Transp. § 310.

According to appellee's testimony, he did not fix the value, but it was fixed by the agent, and at his request written into the contract by the appellee.

The rulings above quoted seem to us to be a fair and just construction of the statute in question, and, when applied to this case, under the facts, we think the appellee was entitled to recover. Especially is this true since the evidence does not show that the cattle were actually shipped upon the lower rate fixed by the commission. The burden was upon the railway company to show, not only the acceptance of the bill of lading in lieu

of the oral contract by Jones, but his assent to its terms, and such assent and acceptance cannot be presumed from its use as means of transportation by him. 4 R. C. L. "Carriers," § 240. Appellant alleged that the shipment was made under the lower rate, but, aside from the recital of that fact in the contract, which the uncontradicted evidence shows appellee did not read, there is no testimony to sustain the allegation. The written contract is neither mutual, nor is it sustained by a consideration.

The several stipulations pleaded by appellant cannot therefore be set up as a defense, since they were no part of the verbal contract under which the cattle were accepted and loaded. What is here said disposes of appellant's principal assignments.

[5] There may be some technical errors in the charge of the court, but, taken as a whole, we think it is a fair presentation of the case, and these assignments will be overruled.

Upon consideration of the whole case, we are of the opinion that a proper judgment has been rendered, and the errors insisted upon by appellant, if errors in fact, are harmless, and the judgment is affirmed.