MEXICO NORTHWESTERN RY. CO. v. WILLIAMS. (No. 897.)*

(Court of Civil Appeals of Texas. El Paso. Jan. 23, 1919. Rehearing Denied Feb. 20, 1919.)

1. CARRIERS ⊕═32(2)—INTERSTATE COMMERCE —REGULATIONS—WAIVER OF LIMITATION.

In case of an interstate shipment, a stipulation in the shipping contract, requiring notice of claim in writing within a day after delivery of the live stock and before same should be withdrawn from the point of destination and mixed with animals, cannot, under the Intertate Commerce Act, be waived.

2. PLEADING ⊕═290(3)—VERIFIED PLEA—NECESSITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5714, a plea, setting up that a shipper of live stock failed to give notice of claim within a day after delivery at destination, etc., must be verified, and, if not verified, raises no such issue.

3. CARRIERS ⊕═218(8) — CARRIAGE OF LIVE STOCK—CONDITIONS—CARE OF STOCK.

It is the duty of a railroad company to furnish cars suitable to transport live stock, and it cannot escape liability for injury to a shipment on the ground that the shipping contract required the shipper to bed, inspect, and accept the cars, etc.

4. CARRIERS ⊕═228(2) — CARRIAGE OF LIVE STOCK—BURDEN OF PROOF.

A carrier must show that conditions in a contract for the shipment of live stock relative to the shipper's duty to inspect cars, etc., were reasonable.

5. APPEAL AND ERROR ⊕═928(1)—REVIEW— PRESUMPTIONS.

Where the court did not submit delay as one of the causes of injury to a shipment of live stock, and there was no special charge requested on the subject, it will on appeal, be presumed that the evidence did not authorize such a charge.

6. APPEAL AND ERROR ⊕═932(1) — REVIEW — PRESUMPTIONS.

Where the court did not submit delay as one of the causes of injury to a shipment of live stock, the appellate court will not presume that the jury took into consideration delay. in assessing damages, etc.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by F. L. Williams against the Mexico Northwestern Railway Company and another. From a judgment for plaintiff against the named defendant, it appeals. Affirmed.

Turney, Culwell, Holliday & Pollard, of El Paso, for appellant.

J. A. Gillett, of El Paso, for appellee.

HARPER, C. J. This is an action to recover the value of 20 head of cattle not delivered, and, for injuries to others of a shipment of 500 head from Madera, republic of Mexico, to El Paso, Tex., alleged to have been caused by improper bedding of cars, unreasonable delays, and rough handling in transit, by reason of which the market value of those delivered was diminished.

It is further charged that the defendants, Mexico Northwestern Railway Company and El Paso Southern Railway Company, were connecting carriers, and that they were transported in the same cars from the point of shipment to destination.

The Mexico Northwestern Railway Company answered by general denial, special exception, and that said shipment was made under the terms of a written contract, which provided as a condition of right to make claim for any loss or damages during transportation that the shipper should give notice of such claim in writing to some agent of the company within a day after delivery of such stock at point of destination, and before same were withdrawn from said point. and before they were mixed with any other stock, and that a failure to do so should prevent a recovery, and averred that no such notice was ever given; and, further, that the contract provided that the shipper who accepted the cars

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted by Supreme Court April 2, 1919.

furnished should see that same were in good and secure condition, and would not hold the company liable for any negligence or carelessness on his part or upon the part of his agent or employé; that it was the shipper's duty to see that the cars were in proper condition; that they were accepted in the condition they were in, so if any loss or injury resulted by reason of their condition or the bedding, it was at the responsibility of plaintiff and not defendant.

The El Paso Southern Railway Company adopted the above answer.

Plaintiff in reply filed general denial; specially pleaded that the provisions of the contract pleaded in bar are void and unenforceable: First, because it is an effort to limit their common-law liability; second, that the provisions were unreasonable; third, printed in a foreign language; and further that, in case same should be held to be valid, defendants had waived their right to rely thereon as a defense, for the reason that when the cattle reached their destination plaintiff in person informed the agent of the delivering carrier, who was the authorized representative of the Mexico Northwestern Railway Company, that the cattle were injured and damaged before they had been mixed with other cattle, and the delivering agent endeavored to exact from plaintiff a release of all damages precedent to accepting freight charges; and, further, that the provision that required plaintiff to inspect and accept the cars prior to their use was unreasonable, therefore contrary to public policy and void; further, that the contract was printed in Spanish and executed and performed in Mexico; that the damages to the cattle were inflicted in Mexico, and the injured cattle were subsequently delivered into Texas, and, the courts of this state having acquired jurisdiction, the liability should be determined by the laws of Texas, and that under its laws the provisions of the contract are void.

Upon hearing before a jury, the court instructed them to find for the El Paso Southern Railway Company, and, upon a verdict of the jury for $3,000, judgment was entered against the Mexico Northwestern Railway Company for said amount, from which the latter appealed.

[1] It being admitted that notice of claim for damages was not given in writing as required by the contract, appellant urges that the court should have instructed a verdict for it, because such notice was a prerequisite to recovery in a shipment controlled by Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379. It has been expressly so held. Northern Pacific Ry. Co. v. Wall, 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905. Appellee urges that the stipulation in the contract has been waived. The Supreme Court of the United States holds that it cannot be waived in Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948.

But appellee further urges the counter proposition that this was not an interstate shipment under the provisions of the act of Congress in regulation of common carriers of interstate and foreign commerce (title LVIA, U. S. Compiled Statutes 1913), because the facts are that this was a shipment from a point in a foreign country to a port of entry where it was delivered, and that the act applies only to shipments "from a foreign country to any place in the United States and carried to such place from a port of entry." The contract, containing the stipulations invoked, provides that "the cattle will be transported from the station of Madera to the station of Cuidad Juarez." Both of said stations are in the republic of Mexico.

There is nothing in the records before us to show that the El Paso Southern Railway Company or any other railroad company hauled the cattle at all within the United States (unless mere switching across the river constitutes hauling), except the allegation in plaintiff's petition that it is a subsidiary company to the Mexico Northwestern Railway Company and its connecting carrier, and that it (the El Paso Southern Railway Company) received the cattle at its connecting point and transported them to El Paso, in the cars of the said Mexico Northwestern Railway Company in which they were originally loaded. In this connection, the Santa Fé Railway Company's yard foreman testified that:

"From Juarez to the Santa Fé pens was purely a switching movement. I think it was a Mexico Northwestern engine that put them there, but I am not positive. It was either a Santa Fé or Mexico Northwestern engine. In a movement of that kind from Juarez * * * as to where the Santa Fé would pick up the shipment to take it to the pens, in some instances the Mexico Northwestern would set them over the river just on this side and leave them, and the Santa Fé would pick them up there, and on other occasions the Mexico Northwestern would bring them all the way over and set them in on the unloading dock track. This movement was by one or the other of these methods."

So the writer is of the opinion that it cannot be determined here otherwise than that the initial carrier completed the haul, and delivered the cattle to the pens in El Paso, and, there is no contention that they were hauled away from the city of El Paso under the contract. The question now arises as to whether this switching of the cattle from the Mexico port of Cuidad Juarez, to the United States port of El Paso brings the shipment within the provisions of the statute above invoked, so as to make the shipment "interstate commerce." I think not. The wording of the statute (section 8563 [1]):

"The provisions of this act shall apply to * * * any corporation * * * in the trans-

portation * * * of property shipped from a foreign country to any place in the United States and carried to such place from a port of entry either in the United States or an adjacent foreign country"

—clearly conveys the meaning that the property transported must be billed and conveyed to a point beyond the port of entry, in other words, a mileage haul, and not a mere switching to the port of El Paso, in order to become interstate commerce and be controlled by the provisions of the act, and this the evidence fails to establish. For all this record shows the cattle were transported under a contract which designated Cuidad Juarez as their destination and delivered to a point immediately across the boundary line between the republic of Mexico and the United States, for there is no evidence of the location of the Santa Fé pens at which they were delivered, except that they were in El Paso, Tex. Therefore I am of the opinion that in the absence of pleading and proof of the laws of Mexico applicable to the contract pleaded the liability of the appellant company must be determined by the laws of Texas, and that for this reason the plaintiff's right of recovery is governed by the laws of Texas, as hereinafter noted and applied.

[2] My Associates do not concur in this view, but are of the opinion, in which I concur, that the assignments should be overruled, notwithstanding that it is an interstate shipment, because the appellant did not verify its plea of failure to give notice as required by article 5714, Revised Civil Statutes of Texas (Vernon's Sayles'), which provides that:

"No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon, shall ever be valid, * * * fixing the time within which such notice shall be given at a less period than ninety days * * * and it shall be presumed that notice has been given, unless * * * specially pleaded under oath."

Appellant did not plead the stipulation as a bar to appellee's right to recover under oath. Therefore the want of notice was not put in issue under this statute. Railway Co. v. Williams, 129 S. W. 847; St. Louis & S. F. Ry. Co. v. Honea, 84 S. W. 267. We all concur that this statute is a rule of procedure which must be observed in pleading a defense of this nature in the courts of Texas.

[3] As to the stipulation in the contract requiring the shipper to bed and inspect, accept, etc., the cars and waiver of damages on account of improper bedding:

"It is the duty of the railroad company to furnish a car suitable to transport the cattle [in it], and it cannot shield itself by proving that the shipper was to examine the car as to its fitness to transport this property." Gulf & S. F. Ry. Co. v. Boger, 169 S. W. 1093.

[4] All members of the court concur in the further view that these assignments should be overruled, because the defendant had the burden of showing by pleading and proof that these provisions in its contract were reasonable, and that it has not met the burden. Hovey v. Tankersley, 177 S. W. 153; Ry. Co. v. Jones, 182 S. W. 1.

[5, 6] Last, appellant charges that the verdict and judgment are excessive, because: 1st, the evidence shows that the principal part of the damages were due to delay, and that the court's charge did not permit a recovery for that—therefore the amount of loss directly attributable to improper bedding and rough handling were left indefinite. This assignment is not supported by a proposition, but if we comprehend its full scope and meaning the answer is that, whilst we are not called upon to plow through the statement of facts to determine what portion of the damages, if any, was due to delay and what to other alleged causes, we have carefully read the facts and have concluded that there is sufficient evidence of loss of values occasioned by reason of improper bedding and rough handling to support the verdict. Since the court did not submit delay as one of the causes of injury, and there was no special charge requested upon the subject, it should be presumed that the evidence did not authorize such a charge, and, further, it will not be presumed that the jury took into consideration any element of damages, or any alleged act charged to be a proximate cause of injury which was not submitted.

So, having concluded that there is evidence to support the amount of verdict found by the jury, we are not authorized to further review the record upon the question.

Finding no error in the record, the cause is affirmed.