NORTHERN MILLING COMPANY, Respondent, vs. DAVIS, Agent under Transportation Act of 1920, Appellant.

*September 14—November 8, 1922.*

*Carriers: Bills of lading: Delivery to notify party: Retention of warehouse receipts for freight charges: Limitation of actions: Limitation in bills of lading: Causes of action arising during federal control.*

1. Under secs. 8 and 9, ch. 415, 39 U. S. Stats. at Large (the Uniform Bills of Lading Act), where the notify party under order bills of lading presented them properly indorsed by the person to whom they were issued,. and made disposition of the cars covered by the bills, which disposition was complied with by the carrier, there was a delivery of the shipment and the duty of the carrier ceased.

2. The fact that the shipment was stored in a warehouse at the buyer's orders, and the carrier retained the warehouse receipts to secure freight charges, could not, and the fact that the notify party afterwards refused to receive the shipment did not, affect the question of delivery, which was then complete.

3. Under the Cummins amendment to the Carmack amendment to the act to regulate commerce (38 U. S. Stats. at Large, 1196, ch. 176), providing that it shall be unlawful for a carrier to provide a shorter period than two years for the institution of suits against it, limitations in bills of lading that suits shall be brought against the carrier within two years and one day are valid.

4. The act of Congress of February 28, 1920, sec. 206 (a), which provides that suits or proceedings based on causes of action arising out of the federal possession of railroads under the federal Control Act or the act of August 29, 1916, may, after the termination of federal control, be brought against an agent designated by the President, and such actions may, within the periods of limitation prescribed by state or federal statutes but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have jurisdiction of the action had it arisen against the carrier, did not extend the time, as state or federal laws were to govern if they did not extend the time of bringing action beyond two years from the passage of the act, and, if they did, then the act limited them to two years from its passage.

APPEAL from an order of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed.*

Action to recover damages for failure to notify plaintiff of the alleged nondelivery of a shipment of flour from Wausau, Wisconsin, to Boston, Massachusetts, made in October, 1918. The bills of lading were issued to the plaintiff but with orders to notify the American Flour Export Company of the arrival of the flour at Boston. Plaintiff made claim in writing for loss on flour November 14, 1919, which claim was disallowed by the defendant February 25, 1921. This action was begun September 22, 1921.

The defendant answered, alleging that claim for loss was not made within six months of delivery of the flour,

or, in case there was a failure of delivery, within six
months after a reasonable time for delivery had elapsed,
as provided for in the bills of lading and in the tariffs under
which shipment was made; that the suit was not begun
within two years and one day after delivery of the property,
which it is alleged it must be under the provisions of the
bills of lading approved by the interstate commerce com-
mission; and that the defendant made delivery to the
notify party, who produced the bills of lading indorsed in
blank by the plaintiff and ordered disposition of each car,
which order the defendant complied with. Plaintiff de-
murred to each of these separate defenses, and from an order
sustaining the demurrer the defendant appealed.

For the appellant there were briefs by *Samuel H. Cady*
and *D. E. Riordan,* both of Milwaukee, and oral argument
by *Mr. R. N. Van Doren* of Chicago and *Mr. Riordan.*

For the respondent there was a brief by *Bird, Okoneski
& Puchner* of Wausau, and oral argument by *R. E.
Puchner.*

VINJE, C. J. We reach the conclusion that the answer
states three good defenses. It states that the notify party
presented the bills of lading properly indorsed in blank
by the plaintiff to whom they were issued; that the notify
party made disposition of the cars; and that defendant com-
plied with such disposition. That constituted a delivery
of the flour, and defendant's duty as a carrier ceased. The
federal Uniform Bills of Lading Act passed in 1916 gov-
erns the shipment. Secs. 8 and 9 of the act (39 U. S.
Stats. at Large, 539, ch. 415) provide:

"Sec. 8. That a carrier, in the absence of some lawful ex-
cuse, is bound to deliver goods upon a demand made either
by the consignee named in the bill for the goods or, if the
bill is an *order bill,* by the holder thereof, if such a demand
is accompanied by . . . (b) *Possession* of the bill of lading
and an offer in good faith to *surrender, properly indorsed,*

the bill which was *issued for the goods,* if the bill is an order bill; and . . . sec. 9. That a carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is . . . (a) a person lawfully entitled to the possession of the goods, or (b) the consignee named in a straight bill for the goods, or (c) a person in possession of *an order bill for the goods,* by the terms of which the goods are deliverable to his order; or which has been indorsed to him, or in blank by the consignee, or by the mediate or immediate indorsee of the consignee."

It will thus be seen that the carrier was bound to deliver the flour to the notify party upon its presenting to it the bills of lading properly indorsed. The fact that the flour was stored in a warehouse and the warehouse receipts were kept by the carrier as security for the payment of the freight and the fact that the notify party afterwards refused to receive the flour from the plaintiff could not and did not affect the question of delivery. That was complete when the proper party—the notify party in possession of the bills of lading—received disposition of the flour as ordered by it. Under the facts stated in the answer, the defendant was not only justified in delivering the flour to the notify party under sec. 9, the case not coming within the exception mentioned, but it was bound to deliver it under the provisions of sec. 8. There having been a complete delivery to the proper party, it follows that there was no one to notify of a failure to deliver. The refusal to accept the flour from the plaintiff came long after the carrier had made a proper and complete delivery of it. Its lien for freight did not prevent a complete delivery from being made under the provisions of the shipping act. That was a separate and subsequent transaction between the notify party and the carrier.

It is undisputed that more than two years and one day had elapsed between the delivery of the flour and the bringing of the action. This is the limitation provided for in

the bills of lading and such limitations are valid. · *Missouri, K. & T. R. Co. v. Harriman,* 227 U. S. 657, 33 Sup. Ct. 397. The Cummins amendment to the Carmack amendment (Act of March 4, 1915, 38 U. S. Stats. at Large, 1196, ch. 176) provides: "That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years." The limitations of the bills of lading were not less than the minimum provided for by law. But the question arises whether the federal act of February 28, 1920 (41 U. S. Stats. at Large, 461, ch. 91), enlarges the time for bringing the action. The act reads:

"Sec. 206. (a) [*Actions against agent of President—Period of limitation—Courts having jurisdiction.*] Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the federal Control Act, or of the act of August 29, 1916) of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control, be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act. Such actions, suits, or proceedings may, within the periods of limitation now prescribed by state or federal statutes but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier."

The trial court held that the effect of the act was to permit all actions mentioned therein to be brought at any time within two years after the passage of the act. We do not so construe it. The language, "Such actions . . . may, within the periods of limitation now prescribed by state or

federal statutes, but not later than two years from the date of the passage of this act, be brought," etc., leaves the periods of limitations prescribed by state or federal statutes to govern provided they do not extend beyond two years from the date of passage of the act. It was the intent of Congress to limit and not to extend the time of bringing such actions. State or federal laws were to govern if they did not extend the time of bringing actions beyond two years from its passage; if they did, then this act limited them to two years from its passage. Having held that the delivery of the flour was made in October, 1918, it follows that the claim for damages made in November, 1919, was not filed within six months as provided for in the bill of lading.

*By the Court.*—Order reversed, and cause remanded with directions to overrule the demurrer to the answer.