# MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. HARRIMAN.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE FIFTH
SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 121. Argued January 20, 1913.—Decided March 10, 1913.

Adams Express Co. v. Croninger, 226 U. S. 491, and Kansas City
Southern Ry. v. Carl, ante, p. 639, followed to effect that the shipper
who values his goods for the purpose of obtaining the lower of two
duly published rates, based on valuation, is estopped from recover-
ing a greater amount than his own valuation; and that the Car-
mack Amendment to the Hepburn Act of 1906 expresses the policy
of Congress on this subject and supersedes all state legislation
thereon.

It is not unreasonable, and in fact is the method approved by the In-
terstate Commerce Commission, in graduating freight according to
value, to divide the particular subject of transportation into two
classes—those above and those below a fixed amount; and the
establishment of two cattle rates, one based on a maximum fixed
value and the other on the actual value, is not a violation of the
Carmack Amendment of the Hepburn Act.

The Carmack Amendment has withdrawn the determination of valid-
ity of all stipulations in interstate shipping contracts from state law
and legislation. Under that amendment the validity of a provision
that suit must be brought within a specified period is a Federal
question to be settled by the general common law.

The liability imposed by the Carmack Amendment is that of the
common law and it may be limited or qualified by a special contract
with the shipper limiting it in a just and reasonable manner except
exemption from loss or responsibility due to negligence; and so held
as to a stipulation that suit be brought within ninety days from the
happening of the loss.

Limitation of the time within which to bring actions is a usual and
reasonable provision and there is nothing in the policy of the Car-
mack Amendment that is violated thereby.

THE facts, which involve the validity under the Car-
mack Amendment of a contract for interstate shipment of

live stock and a provision therein fixing the valuation of the shipment in case of loss in consideration of a lower rate, are stated in the opinion.

*Mr. Alex. S. Coke, Mr. Joseph M. Bryson* and *Mr. Cecil H. Smith* for plaintiff in error submitted:

Under the act to regulate commerce a carrier may fix its rates with reference to its liability, or the time within which suit shall be brought, in case of loss or damage, increasing the rates where the liability is that fixed by common law or the time for filing it is long and reducing them where the liability is limited or the time within which to sue is short.

Where tariffs duly issued, filed and published contain two rates for the shipment of cattle, one based upon the carrier's common-law liability with the statutory period for filing suit and the other based upon a limited liability with a time less than that prescribed by the statute for suing, such provisions are binding upon the carrier and the shipper and must be observed by them both in the collection and payment of charges and in the adjustment of loss and damage claims. *Kansas City So. Ry. Co.* v. *Albers Comm. Co.*, 223 U. S. 573; *N. Y., N. H. & H. R. R.* v. *Int. Com. Comm.*, 200 U. S. 361, 391; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Tex. & Pac. Ry. Co.* v. *Mugg*, 202 U. S. 242; *Louisville & Nash. R. R. Co.* v. *Motley*, 219 U. S. 467; *Chi. & Atl. R. R. Co.* v. *Kirby*, 225 U. S. 155; *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426.

The courts, whether state or Federal, have no power to declare unreasonable the rates, rules or regulations specified by a carrier in its tariffs unless the matter shall first have been presented to the Interstate Commerce Commission. *Texas & P. Ry. Co.* v. *Abilene Cotton Oil Co., supra; Robinson* v. *Balto. & O. R. R. Co.*, 222 U. S. 506; *B. & O. R. R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 480;

*Int. Com. Comm.* v. *Ill. Cent. Ry. Co.*, 215 U. S. 452; *Int. Com. Comm.* v. *C., R. I. & P. Ry. Co.*, 218 U. S. 88.

Where a carrier specifies two rates on cattle in its tariffs, one based upon its common-law liability and the other upon a limited liability fixed by the terms and conditions of its current live stock contract, such live stock contract, when properly executed, is valid, and the carrier's liability must be determined by its provisions.

There is nothing in the Carmack Amendment forbidding the basing of rates upon limited liability or prohibiting contracts limiting liability in consideration of reduced rates.

Prior to the statute of 11 Geo. IV, and 1 Wm. IV, c. 68, it was held that a carrier who had given notice that he would not be responsible for goods of greater value than five pounds, and in some cases ten pounds, unless the value was declared at the time of shipping, and the rate paid accordingly, would not be liable at all, even for the five pounds or the ten pounds, to a shipper who shipped a package of greater value, as an ordinary package, without disclosing its real value. *Gibbon* v. *Poynton*, 4 Burr. 2298; *Clay* v. *Willan*, 1 H. Bl. 298; *Izett* v. *Mountain*, 4 East, 371; *Batson* v. *Donovan*, 4 B. & Ald. 21.

Under the statute 11 Geo. IV, and 1 Wm. IV, c. 68, which required the shipper to give notice of the value if the value exceeded ten pounds, it was held that the carrier is not liable, even if the loss happens by the gross negligence of his servants, where a parcel of greater value than ten pounds is delivered without declaring its value and paying the rate according to value. *Hinton* v. *Dibbin*, 2 Ad. & E. N. S. 646.

Long prior to the passage of the Carmack Amendment it was held that a contract fairly made, agreeing on the valuation of the property carried with the freight rate based on an assumption by the carrier of liability only to the extent of the agreed valuation, even where the loss

resulted from the negligence of the carrier, would be upheld. *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331. This rule has also been followed in *Kidd* v. *Greenwich Insurance Co.*, 35 Fed. Rep. 351; *Calderon* v. *Atlas Steamship Co.*, 64 Fed. Rep. 874; *S. C.*, 69 Fed. Rep. 574; *The Kensington*, 88 Fed. Rep. 331; *Jennings* v. *Smith*, 106 Fed. Rep. 139; *Saunders* v. *Southern Railway*, 128 Fed. Rep. 15; *Macfarlane* v. *Adams Express Co.*, 137 Fed. Rep. 982; *Missouri &c. Ry. of Texas* v. *Patrick*, 144 Fed. Rep. 632; *Taylor* v. *Weir*, 162 Fed. Rep. 585; *Blackwell* v. *Southern Pac. Co.*, 184 Fed. Rep. 489; *Pierce Co.* v. *Wells-Fargo Co.*, 189 Fed. Rep. 561; and approved in *Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 442; *Calderon* v. *Atlas S. S. Co.*, 170 U. S. 272; *The Kensington*, 183 U. S. 263, and *Pennsylvania R. R. Co.* v. *Hughes*, 191 U. S. 477.

For the cases in the state courts of last resort adopting the rule in the *Hart Case*, see *Alair* v. *Railroad Company*, 53 Minnesota, 160; *Douglas Co.* v. *Railway Co.*, 62 Minnesota, 288; *O'Malley* v. *Railway Co.*, 86 Minnesota, 380; *Loeser* v. *Chicago, M. & St. P. Ry. Co.*, 94 Wisconsin, 571; *Ullman* v. *Chicago &c. Ry. Co.*, 112 Wisconsin, 150; *Baltimore & Ohio Ry. Co.* v. *Hubbard*, 72 Oh. St. 302.

The main purpose of the Carmack Amendment was to give the holder of the bill of lading a right of action against the initial carrier for loss caused by connecting carriers, but it also creates a cause of action against the initial line which is in the nature of a right created by Federal law to take the place of rights prior thereto existing under the common law or under state enactments. *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186; *So. Pac. Ry. Co.* v. *Crenshaw*, 63 S. E. Rep. 865.

The amendment has been frequently construed by state courts and by inferior Federal courts as not prohibiting agreements of the kind in question. *Greenwald* v. *Weir*, 199 N. Y. 170; *Bernard* v. *Adams Express Co.*, 205 Massachusetts, 254; *Travis* v. *Wells-Fargo*, 79 N. J. L. 83; *P. C.*

*C. & St. L. Ry. Co.* v. *Mitchell* (Ind.), 91 N. E. Rep. 735; *Larsen* v. *Oregon S. L. R. Co.* (Utah), 110 Pac. Rep. 983; *Frye* v. *Southern P. Ry. Co.*, 247 Illinois, 564; *Fielder* v. *Express Co.* (W. Va.), 71 S. E. Rep. 99.

For cases under the Harter Act, 27 Stat. 445, see *Calderon* v. *Atlas S. S. Co.*, 64 Fed. Rep. 874; aff'd 69 Fed. Rep. 574; *id.* 170 U. S. 272.

Many States having statutory provisions restricting the right of common carriers to limit their liability by contract, nevertheless apply the rule of the *Hart Case.* *D'Arcy* v. *Adams Express Co.*, 162 Michigan, 363; *Alair* v. *Railroad Co.*, 53 Minnesota, 160; *Douglas Co.* v. *Railway Co.*, 62 Minnesota, 288; *Oppenheimer* v. *U. S. Express Co.*, 69 Illinois, 62: *Johnstone* v. *Richmond & D. R. Co.*, 39 So. Car. 55.

No law or public policy of a State can serve to set aside or change the rates, rules and regulations of a carrier affecting interstate commerce specified in its duly issued, filed and published tariffs. *Mondou* v. *N. Y., N. H. & H. R. R. Co.*, 223 U. S. 1.

Congress has rightfully assumed jurisdiction of the subject-matter, and therefore state laws covering the same must yield. *Southern Ry. Co.* v. *Reid & Beam*, 222 U. S. 444; *Nor. Pac. Ry. Co.* v. *Washington*, 222 U. S. 370; *G., C. & S. F. Ry. Co.* v. *Hefley*, 158 U. S. 98.

Congress has so taken possession of the field of interstate commerce as to render inoperative state laws governing liability where the liability is a matter of contract based upon tariff provisions, in consideration of which the shipper was given a reduced rate.

The finding of the state court that in this case there was in fact no reduction in the rate at which the cattle were to be carried and no consideration for the limitation, in the face of uncontradicted testimony showing that plaintiff in error did have two rates for the shipment of cattle and that defendants in error obtained the benefit of the

lower rate, which they could obtain only by executing the contract limiting plaintiff in error's liability, is not binding upon this court, but it will look to the whole testimony to determine for itself what the fact is. *K. C. So. Ry. Co. v. C. H. Albers Comm. Co.*, 223 U. S. 573.

To so construe the Carmack Amendment as to leave state regulations in force concurrently with the regulations of Congress would permit discrimination and leave uncertainty in a field where Congress clearly intended there should be no discrimination and no uncertainty. *C., M. &c. Ry. Co.* v. *Solan*, 169 U. S. 133, and *Pennsylvania R. R. Co.* v. *Hughes*, 191 U. S. 477, distinguished.

Defendants in error, in declaring the value of their cattle at less than their true value for the purpose of securing a lower rate than they would have been charged had the true value been declared, were guilty of an unlawful act, under the Act to Regulate Commerce and the Elkins Act, and they cannot maintain a suit based upon such transaction. *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Ellison* v. *Adams Express Co.*, 245 Illinois, 410.

A transaction in violation of a penal statute cannot be the basis of judicial action, unless the statute manifests an intention not to limit its scope to the exaction of the penalty. *Miller* v. *Ammon*, 145 U. S. 421; *Brown* v. *Tarkington*, 3 Wall. 377; *Hanauer* v. *Doane*, 12 Wall. 342; *The Florida*, 101 U. S. 37; *Gibbs* v. *Baltimore Gas Co.*, 130 U. S. 396; *McMullin* v. *Hoffman*, 174 U. S. 639; *Harriman* v. *Northern Securities Co.*, 197 U. S. 244.

*Mr. William M. Williams*, with whom *Mr. J. A. L. Wolfe* was on the brief, for defendants in error:

A carrier may fix its rates for interstate shipments with reference to the service to be performed, and may adopt rules and regulations concerning the same; but a shipper will not be bound by a contract, which is invalid and prohibited by law, simply because the rate collected is con-

ditioned upon the signing of such void agreement. *Drey & Kahn Glass Co.* v. *Missouri Pacific Ry. Co.* (Mo. App.), 136 S. W. Rep. 757; *O'Connor* v. *Great Northern Ry. Co.* (Minn.), 136 N. W. Rep. 743; *Hooker* v. *Boston R. Co.* (Mass.), 95 N. E. Rep. 945; *Adams Ex. Co.* v. *Mellinchamp* (Ga.), 75 S. E. Rep. 600; *Cramer* v. *Chicago, R. I. & P. Ry. Co.* (Iowa), 133 N. W. Rep. 387.

The Interstate Commerce Act was intended primarily to regulate rates. The chief purpose of the act was to secure uniformity of treatment to all, to suppress unjust discriminations and undue preferences and to prevent special and secret agreements in respect of rates for transportation. *Kansas City S. R. Co.* v. *Albers Com. Co.*, 223 U. S. 573.

The record does not show that the live stock contract was ever filed with the Interstate Commerce Commission, or that any tariff sheet so filed contained the rules and regulations relied on in this case.

Defendants in error did not misrepresent the value of their cattle for the purpose of obtaining a lower freight rate than they would have secured if the true value had been known.

Upon the general and local applicatory law, the special contract, attempting to limit the carrier's liability for its own negligence, and fixing an arbitrary and unreasonable value upon the cattle, was void. There is nothing in the Interstate Commerce Act to prevent a state court from enforcing its own rules upon this subject, and a judgment based upon the state law as contained in its statutes or decisions raises no Federal question. *Pennsylvania Ry. Co.* v. *Hughes*, 191 U. S. 477; *Chicago, M. & St. P. R. R. Co.* v. *Solan*, 169 U. S. 133; *Savage* v. *Jones*, 225 U. S. 551.

For cases in the state courts as to the effect of the Interstate Commerce Act and the decision in the *Hughes Case, supra*, see *Adams Express Co.* v. *Mellinchamp*, 75

S. E. Rep. 596; *Southern Express Co.* v. *Hanaw*, 134 Georgia, 445; *O'Connor* v. *Great Northern R. Co.*, 136 N. W. Rep. 743; *Hooker* v. *Bostόn & M. R. Co.*, 95 N. E. Rep. 945; *Louisville & N. R. Co.* v. *Smith*, 134 S. W. Rep. 866; *Cramer* v. *Chicago, R. I. & P. R. Co.*, 133 N. W. Rep. 387. See also *Latta* v. *Chicago, St. P. & M. R. Co.*, 172 Fed. Rep. 850.

MR. JUSTICE LURTON delivered the opinion of the court.

This was an action in a state court of Texas by a shipper of cattle, under a special live-stock transportation contract for a shipment from a point in Missouri to a point in Oklahoma, to recover the value of cattle killed by a negligent derailment occurring in the former State. The shipment consisted of four bulls and thirteen cows, claimed to have been very valuable "show cattle." They were all killed, and plaintiffs recovered their full value, $10,640, and this judgment was affirmed by the court below.

As the transaction was an interstate shipment the case comes here upon questions which involve the validity of certain provisions in the contract of shipment when tested by the twentieth section of the Act to Regulate Commerce, as amended by the act of June 29, 1906 (34 Stat. 584, c. 3591).

Aside from the question of negligence, which we assume to be closed by the verdict and judgment in the state court, the defenses pressed here are, first, that the limitation of value in case of loss or damage to thirty dollars for each bull and twenty dollars for each cow, was a valid declaration of the valuation upon which the rate was based; and, second, that the action was not brought within ninety days after damage sustained, both being stipulations found in the shipping contract.

Those provisions in the contract which directly relate to the questions stated are as follows:

The title at the head of the contract is,—

"RULES AND REGULATIONS FOR THE TRANSPORTATION
OF LIVE STOCK.

NOTICE.

This Company has two rates on live stock."

Then follows a paragraph in these words:

"Ordinary Live Stock transported under this special
contract is accepted and hauled at rate named below at
owner's risk, as per conditions herein set forth, with the
distinct understanding that said rate is a special rate,
which is hereby agreed to, accepted and understood to be
at less than published tariff rate applying thereon when
transported at carrier's risk.

"All Kinds of Live Stock, Carrier's Risk, will be taken
under the provisions and at rates provided for by existing
tariffs and classification."

Then follows the contract described as "Special Live
Stock Contract No. 4. Executed at Pilot Grove Station,
1–30–1907."

Passing over a number of provisions concerning the
agreement upon the part of the carrier, and a number of
things which the shipper assumes to do, we come to § 8,
which is in these words:

"8. The carrier does not ship live stock or Emigrant
Outfit under this contract or at the rate hereon given upon
which its liability in case of any loss or injury, shall exceed
the following prices per head:

Each horse, (gelding, mare, stallion mule or jack) $100.00
Each pony or range horse. . . . . . . . . . . . . . . . . . . . . . . 30.00
Each Ox, Steer or bull. . . . . . . . . . . . . . . . . . . . . . . . . . 30.00
Each cow. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20.00
Each calf or hog. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.00
Each sheep or goat. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.00

"Emigrant Outfit (not live stock) consisting of Emi-
grant Movables, Household Goods, Second-hand Farm

Machinery, etc., when loaded with live stock, as per classification at valuation not to exceed $5.00 per 100 pounds in case of loss or damage, and said shipper represents and agrees that his said live stock or emigrant outfit do not exceed in value those prices, and in case of any loss or damage thereto, by carrier's negligent transportation, or handling of said cars as aforesaid, it is mutually agreed, in consideration of the rate named, and which is less than the rate applying on shipments at carrier's risk, the shipper shall be entitled to recover only actual damages, but in no instance more than the stipulated valuation shown above."

The provision of the published tariff sheet referred to in the contract is set out in the margin, preceded by the offer of counsel to file it in evidence.[1] By a clause in the ninth

---

[1] Mr. Head: We offer the following portions of I. C. C. tariff No. A–1636, M. K. & T. Local Distance Tariff No. 2548 applying on classes and commodities:

MISSOURI, KANSAS & TEXAS RAILWAY CO.
THE 'KATY' ROUTE.
Local Distance Tariff No. 2548.
(Cancels No. 737.)

Applying on classes and commodities between stations on the Missouri, Kansas & Texas Ry. as follows:

| Between Stations in | And Stations in |
|---|---|
| Indian Territory | Oklahoma Territory |
| Missouri or Kansas | Indian Territory |
| Missouri or Kansas | Oklahoma Territory |

And locally between Stations in the Indian or Oklahoma Territories.
Rates in Cents Per 100 lbs.
CATTLE (See Rule 3)

| Distance | Commodities | Carloads. |
|---|---|---|
| 380 miles and over 370. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 26½ |

Rule 3.
LIVE STOCK—Continued.

*Limitation of Liability.*—Rates provided on Live Stock will apply only on shipments made at Owner's Risk, with limitation of liability on the part of the railroad company as common carrier under the terms and conditions of the current Live Stock contract provided by this

section of the contract under which the cattle were shipped it is stipulated that "no suit shall be brought against any carrier, and only against the carrier on whose line the injuries occur, after the lapse of 90 days from the happening thereof, any statute or limitation to the contrary notwithstanding."

In respect of the two stipulations just referred to, the trial judge charged the jury as follows:

"The contract of shipment in this case contains among other things, a stipulation that suit for any damages growing out of this shipment must be commenced within ninety days. You are instructed that such stipulation is void and not binding upon the plaintiffs herein.

"Said contract also contains a stipulation to the effect that if the cattle in the shipment are lost or killed, that their owners can only recover a certain fixed amount, which amount is named in said contract. You are instructed that such stipulation is void and not binding upon plaintiffs in this case, and if you should find for plaintiffs, you will fix the amount of their damages under instructions hereinafter given you."

This charge was approved upon appeal and the judgment affirmed. The ground upon which the charge in respect to the limitation of recovery in case of loss was based was first, that every such contract, where the loss was due to negligence, was null and void under the law and public policy of the State; and, second, that it was a contract of exemption forbidden by the Hepburn Act of June 29, 1906, being the Carmack Amendment of the

---

company, the contract to be first duly executed in manner and form provided therein.

120 per cent. of the rates named in this tariff will be charged on shipments made without limitations of carrier's liability at common law and under this status, shippers will have the choice of executing and accepting contracts for shipments of Live Stock with or without limitation of liability, the rates to be made as provided for herein.

twentieth section of the general act to regulate commerce of February 4, 1887. (24 Stat. 379, c. 104.)

That the shipper had the choice of two rates, one twenty per cent. higher than the other, upon this shipment, is shown by the provisions of the shipping contract and the tariff sheets referred to therein. That the difference between the two rates was not unreasonable, the one when the cattle were not valued and the other when their value was declared, is to be assumed from the acceptance of the rates as filed with the Commission. That the "portion" of the rate sheets in evidence does not include the "Current Live Stock Contract" referred to in the part filed, is of no vital significance. The objection was not made below. The case was proceeded with in the state court upon the hypothesis that the "Current Live Stock Contract," referred to in the "portion" of the rate sheets actually in evidence, was the live stock contract executed by the parties, and had been duly filed as part of the rate sheets. It is too late to make an objection here which, if made below, might have been remedied by filing all instead of a "portion" of the filed tariff. *Texas & P. Railway* v. *Abilene Oil Co.*, 204 U. S. 426. In any event the rate sheets do provide for a choice between two rates, one with and one without a declared valuation. In one case the carrier is liable for whatever loss or damage the shipper sustains and in the other its liability is limited to the valuation upon which the rate was based. The ground upon which the shipper is limited to the valuation declared is that of estoppel, and presupposes the valuation to be one made for the purpose of applying the lower of two rates based upon the value of the cattle. This whole matter has been so fully considered in *Adams Express Company* v. *Croninger*, 226 U. S. 491, and *Kansas City Southern Railway* v. *Carl*, just decided, that we only need to refer to the opinions in those cases without further elaboration.

That the trial court and the Court of Civil Appeals

erred in holding this stipulation null and void because forbidden by either the law or policy of the State of Texas, or by the twentieth section of the act of June 29, 1906, is no longer an open question since the decisions of this court in the cases just referred to.

Nor is there anything upon the face of this contract, when read in connection with the rate sheets referred to therein, (of which the defendants in error were compelled to take notice not only because referred to in the contract signed by them, but because they had been lawfully filed and published), which offends against the provisions of the twentieth section of the act of June 29, 1906.

Neither is the valuation of cattle at thirty and twenty dollars per head subject to impeachment as upon its face arbitrary and unreasonable. The valuation in this case was made by the consignor himself. The contract upon this point reads, "And said shipper represents and agrees that his said live stock . . . do not exceed in value those prices," referring to the schedule set out immediately above that declaration. That the cattle were not other than average or ordinary cattle of no peculiar value. as "show cattle," or otherwise, is indicated by the character of the printed form of contract signed by the consignor. After reciting that the company had two rates on live stock, it proceeds,—"Ordinary live stock transported under this special contract," etc.

The contract here involved is substantially identical with the contract and schedule upheld in *Hart* v. *Pennsylvania Railroad*, 112 U. S. 331, where the transportation was "on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation: 'If horses or mules, not exceeding two hundred dollars each. If cattle or cows, not exceeding seventy-five dollars each.'"

In the case at bar it has been said that the shipper was not asked to state the value, but only signed the contract

handed to him and made no declaration. But the same
point was made in the *Hart Case,* when the court said
(p. 337):

"A distinction is sought to be drawn between a case
where a shipper, on requirement, states the value of the
property, and a rate of freight is fixed accordingly, and
the present case. It is said, that, while in the former case
the shipper may be confined to the value he so fixed, in
the event of a loss by negligence, the same rule does not
apply to a case where the valuation inserted in the con-
tract is not a valuation previously named by the shipper.
But we see no sound reason for this distinction. The
valuation named was the 'agreed valuation,' the one on
which the minds of the parties met, however it came to be
fixed, and the rate of freight was based on that valuation,
and was fixed on condition that such was the valuation,
and that the liability should go to that extent and no
further."

It is said that the contract in the case at bar includes a
valuation of all bulls and all cows at the same sum, and
that this is arbitrary and not the result of any real effort
to value the particular bulls and cows to be transported.
But the same objection applied to the contract in the *Hart
Case,* where horses were valued at the same maximum
value and other cattle at the same fixed sum. But here,
as there, it is plain that all animals, horses and other
cattle, have not a fixed value, and so, the contract fixes
"a graduated value according to the nature of the animal."

It is not unreasonable for the purpose of graduating
freight according to value to divide the particular subject
of transportation into two classes, those above and those
below a fixed maximum amount. No other method is
practicable, and this is a method administratively ap-
proved by the Commerce Commission.

That the value of the cattle shipped under this valuation
did greatly exceed the valuation therein represented, may

be true. It only serves to show that the shipper obtained a lower rate than he was lawfully entitled to have by a misrepresentation. It is neither just nor equitable that he shall benefit by the lower rate, and then recover for a value which he said did not exist, in order to obtain that rate. Having obtained a rate based upon the declared value, he is concluded, and there is no room for parol evidence to show otherwise. *Hart* v. *Pennsylvania Railroad* and *Kansas City &c. Railroad* v. *Carl, supra.*

When the carrier graduates its rates by value and has filed its tariffs showing two rates applicable to a particular commodity or class of articles, based upon a difference in valuation, the shipper must take notice, for the valuation automatically determines which of the rates is the lawful rate. If he knowingly declares an undervaluation for the purpose of obtaining the lower of two published rates, he thereby obtains an advantage and causes a discrimination forbidden and made unlawful by the first section of the Elkins Act of February 19, 1903 (32 Stat. 847, c. 708). *Texas & P. Railway* v. *Mugg,* 202 U. S. 242; *Chicago & A. Railway* v. *Kirby,* 225 U. S. 155. The particular cattle were loaded by the shipper and were never seen by the company's agent. Neither was it claimed that he was informed of the value or quality of the cattle to be shipped. We see no ground upon which this contract can be held upon its face to have offended against the statute.

The court below held that the stipulation in the shipping contract that no suit shall be brought after the lapse of ninety days from the happening of any loss or damage, "any statute or limitation to the contrary notwithstanding," was void.

It is conceded that there are statutes in Missouri, the State of the making of the contract, and the State in which the loss and damage occurred, and in Texas, the State of the forum, which declare contracts invalid which require the bringing of an action for a carrier's liability

in less than the statutory period, and that this action, though started after- the lapse of the time fixed by the contract was brought within the statutory period of both States.

The liability sought to be enforced is the "liability" of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack Amendment of the Hepburn Act of June 29, 1906. The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed is a Federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation. *Adams Express Co.* v. *Croninger,* 226 U. S. 491; *Michigan Central Railroad* v. *Vreeland,* *ante,* p. 59. The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence. *Adams Express Company* v. *Croninger,* and *Michigan Central Railroad* v. *Vreeland,* cited above; *York Co.* v. *Central Railroad Co.,* 3 Wall. 107; *Railroad Company* v. *Lockwood,* 17 Wall. 357; *Express Company* v. *Caldwell,* 21 Wall. 264, 267; *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331.

The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court. Such stipulations have been sustained in insurance policies. *Riddlesbarger* v. *Hartford*

*Insurance Co.,* 7 Wall. 386.   A stipulation that an express company should not be held liable unless claim was made within ninety days after a loss was held good in *Express Company* v. *Caldwell,* 21 Wall. 264.   Such limitations in bills of lading are very customary and have been upheld in a multitude of cases.   We cite a few: *Central Vermont Railroad* v. *Soper* (1st C. C. A.), 59 Fed. Rep. 879; *Ginn* v. *Ogdensburg Transit Co.* (7th C. C. A.), 85 Fed. Rep. 985; *Cox* v. *Central Vermont Railroad,* 170 Massachusetts, 129; *North British &c. Insurance Co.* v. *Central Vermont Railroad,* 9 App. Div. (N. Y.) 4, aff'd 158 N. Y. 726.   Before the Texas and Missouri statutes forbidding such special contracts, short limitations in bills of lading were held to be valid and enforceable.   *McCarty* v. *Gulf &c. Ry.,* 79 Texas, 33; *Thompson* v. *Chicago &c. Ry.,* 22 Mo. App. 321. See cases to same effect cited in 6 Cyc., p. 508.   The provision requiring suit to be brought within ninety days is not unreasonable.

For the errors indicated, the judgment must be reversed for such further proceedings as may be consistent with this opinion.

Mr. Justice Hughes concurs in the result.   Mr. Justice Pitney dissents.