Antoinette **WRIGHT**, Plaintiff(s),

v.

**DAIMLERCHRYSLER CORPORATION,**
Defendant(s).

No. 02–CV–71311.

United States District Court,
E.D. Michigan.
Southern Division.

Sept. 30, 2002.

Joan M. Barnes, Barnes, Monroe, Bloomfield Hills, MI, for plaintiff.

Thomas A. Cattel, Kristin P. Allen, Cattel, Tuyn, Bloomfield Hills, MI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter came before the Court on Defendant's motion for summary judgment. Being fully advised in the premises, having read the pleadings, and for the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment.

## I. Facts

In 1996, Plaintiff Antoinette Wright applied for a position as an hourly worker with Defendant DaimlerChrysler. Resp. at 1. The application, which Ms. Wright signed, stated in relevant part:

8. In consideration of Chrysler's review of my application, I agree that any claim or lawsuit arising out my employment with, or my application for employment with, Chrysler Corporation or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. While I understand that the statute of limitations for claims arising out of an employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations set forth herein, and I WAIVE ANY STATUE OF LIMITATIONS TO THE CONTRARY. Should a court determine in some future lawsuit that this provision allows an unreasonably short period of time to commence a lawsuit, the court shall enforce this provision as far as possible and shall declare the lawsuit barred unless it was brought within

the minimum reasonable time within which the suit should have been commenced.

Application for Employment, attached as Defendant's Exhibit A.

In 1996, DaimlerChrysler hired Ms. Wright to work in its Mound Road facility, under Juan's supervision.[1] Compl. ¶¶ 16–17. In either December of 1998 (Compl. ¶ 16) or August of 1997 (Letter from James C. Brown, attached as Plaintiff's Response to Affidavit of Judith E. Caliman, Esq.), Juan "repeatedly asked her to meet him after work." Compl. ¶ 19. Ms. Wright rejected his advances. Compl. ¶ 20. In retaliation, Juan re-assigned her to the "Pit," an area of the plant soaked in oil and regarded as the worst in the plant to work. Resp. at 1. While working in the Pit, Ms. Wright slipped on the oil and injured herself. *Id.* She was still lying on the floor after the fall when Juan ordered her to continue working. Unable to do so, and injured, Ms. Wright reported to the plant infirmary. *Id.* When Ms. Wright was unable to return to work the following day, Juan fired her. *Id.*

DaimlerChrysler reinstated Ms. Wright to her position following Ms. Wright's filing of a grievance pursuant to the relevant collective bargaining agreement. *Id.* Upon her return, Juan assigned her to a difficult job and continually visited her work area. *Id.* On his numerous visits he criticized her work and threatened to fire her. *Id.* Plaintiff complained about Juan's requests for a sexual relationship, his retaliatory behavior, and the overall hostile environment to management. *Id.* at 2. In response to Ms. Wright's complaint, DaimlerChrysler transferred her to the Trenton Engine facility in November of 1999. *Id.*

Chris Buzenbark supervised Ms. Wright at the Trenton facility. Compl. ¶ 43. In December of 1999, Mr. Buzenbark propositioned her. Compl. ¶ 44. She consistenity rejected his sexual advances. Compl. ¶ 45. In response to Ms. Wright's rejections, Mr. Buzenbark threatened to fire her or give her poor work evaluations. Compl. ¶ 47 and Resp. at 2. Ms. Wright complained to management about his threats. DaimlerChrysler, in turn, removed Mr. Buzenbark as her supervisor during the week. Resp. at 2. On the weekends, however, Mr. Buzenbark remained Ms. Wright's supervisor and continued his retaliatory behavior. *Id.* Ms. Wright complained to management again, and in response DaimlerChrysler transferred her to another area of the plant. *Id.* At that point, Plaintiff was aware of DaimlerChrysler's practice of re-assigning women who complain of sexual harassment. *Id.*

On February 17, 2000, Ms. Wright left her job at DaimlerChrysler under a disability described by her psychiatrist as "chronic and debilitating episodes of anxiety and depression," *d.;* Letter from Dr. Xavier White attached as Plaintiff's Exhibit 1. Prior to the harassing incidents, Ms. Wright took medical leaves for a psychiatric condition. Letter from James C. Barnes, Jr., attached as Plaintiff's Response to Affidavit of Judith E. Caliman, Esq. Nevertheless, she maintains that her current disability was caused by her hostile work environment and DaimlerChrysler's practice of "punishing the victim."[2] Resp. at 2.

Ms. Wright contacted DaimlerChrysler's benefits department to request workers' compensation benefits. Compl. ¶ 59. In-

---

1. Juan's last name is not mentioned in any of the pleadings.

2. Her psychiatrist attributes her significant stress to her divorce in 1999 and caring for a child with a severe developmental disorder, in addition to "frustrations associated with interpersonal conflict with women and men who make sexual advances toward in the work place." Plaintiff's Exhibit 1.

stead of following her request, Daimler-Chrysler's benefits administrator enrolled her in the company's Sickness and Accident benefits plan. Compl. ¶ 60. Ms. Wright claims that the benefits under that plan are significantly less than the benefits she would have received from workers' compensation, and that she suffers "emotionally, financially, and otherwise as a result of the conspiracy to deny her benefits." Compl. ¶¶ 60–61.

An employee is required to visit a plant doctor in order to continue receiving Sickness and Accident benefits. Resp. at 3. In May of 2000, DaimlerChrysler discharged Ms. Wright for failing to attend a scheduled appointment with a plant physician. *Id.* Ms. Wright claims that DaimlerChrysler did not notify her of the appointment. *Id.* She filed a timely grievance of her discharge pursuant to the relevant collective bargaining agreement, and Daimler-Chrysler reinstated her. *Id.*

In 2001, DaimlerChrysler reduced Plaintiff's Sickness and Accident benefits. Plaintiff's Affidavit ¶ 17. On October 3, 2001, Plaintiff formally applied for workers' compensation by filing an Application for Mediation or Hearing, attached as Plaintiffs Exhibit 6. DaimlerChrysler answered her application on February 11, 2002, by denying her liability for her claim. Plaintiff's Exhibit 7

## II. Procedural Background

On April 3, 2002, Ms. Wright filed a complaint in the United States District Court, Eastern District of Michigan pursuing three claims. The first alleges sexual harassment in violation of the Elliot–Larson Civil Rights Act due to the events involving Juan and the Mound Road facility. The second alleges sexual harassment in violation of the Elliot–Larson Civil Rights Act due to the events involving Chris Buzenbark and the Trenton Engine facility. The third claim alleges tortious

refusal to pay workers' compensation benefits.

Defendant responded to Plaintiff's complaint with this motion for summary judgment, arguing that her complaint is untimely because a provision in Plaintiff's employment contract places a six month limitation on any claim or lawsuit arising out of her employment. Plaintiff replied that the six month limitation is unenforceable, or, in the alternative, she satisfied it by making a claim within the six month period. Lastly, she argues that Defendant's motion is premature because it denies her the ability to conduct discovery.

## III. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-aided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## IV. Analysis

### A. Enforceability of the Contractual Limitation on Claims for Sexual Harassment

Plaintiff argues that the six month limitation on claims and lawsuits is not enforceable for three reasons. First, contracts that shorten statutory limitations on lawsuits must be reasonable, and she contends that this limitation is not reasonable. Second, Plaintiff argues that the savings clause invalidates the entire limitation. Third, Plaintiff argues that the limitation is contrary to public policy.

#### 1. Reasonableness of the Contractual Limitation

■■■ Michigan courts allow parties to contract for a period of limitation shorter then that provided by statute. *Camelot Excavating Co., Inc. v. St. Paul Fire and Marine Ins. Co.,* 410 Mich. 118, 301 N.W.2d 275, 277 (1981). However, the limitation must be reasonable. *Id.* at 277. A limitation must pass the following three prong test to be reasonable:

(1) the claimant had sufficient opportunity to investigate and file the action;

(2) the time is not so short as to work a practical abrogation of the right of action; and

(3) the action is not barred before the loss or damage can be ascertained. *Id.*

■■■ Employment contracts in particular may include a limitation on lawsuits shorter than the statutory limitation. *See Herweyer v. Clark Highway Services, Inc.,* 455 Mich. 14, 564 N.W.2d 857 (1997); *Timko v. Oakwood Custom Coating, Inc.,* 244 Mich.App. 234, 625 N.W.2d 101 (2001). However, the Michigan Supreme Court has cautioned that limitations in employment contracts deserve close scrutiny because of the unequal bargaining power of the parties. *Herweyer,* 564 N.W.2d at 860.[3] Therefore, the question for the court is whether the six month limitation is reasonable.

The *Timko* court held that a six month limitation in an employment contract was reasonable. In that case, plaintiff Ernest Timko signed an application for employment with defendant Oakwood Custom Coating ("Oakwood") that included a clause limiting actions or suits arising out of his employment to 180 days after the event giving rise to the claim. *Timko,* 625 N.W.2d at 102–3. Oakwood discharged Timko on February 7, 1997. Timko, in turn, sued Oakwood on March 3, 1998, for unlawful age discrimination. Oakwood moved for summary disposition based on the six month limitation. Timko replied that the limitation should not be enforced because there was no consideration to support the contract, or, alternatively, it was a contract of adhesion. *Id.* at 103. The trial court rejected Timko's arguments, granted

---

**3.** Terms contained in an employment application become part of the contract for employ- ment. *Timko,* 625 N.W.2d at 108.

Oakwood's motion, and Timko appealed. *Id.*

■ The Michigan Court of Appeals analyzed the case by first deciding if the limitation was reasonable. The court adopted the reasoning of the Sixth Circuit, which held in *Myers v. Western–Southern Life Ins. Co.*, 849 F.2d 259, 262 (1988), that "[t]here is nothing inherently unreasonable about a six month limitations period." *Id.* at 105. The court reasoned that "[b]oth Michigan law and federal law provide for six-month or even shorter periods of limitation in the context of various employment actions."[4] *Id.* Because a six month limitation was not inherently unreasonable, and Timko failed to provide any evidence that the specific limitation in his contract was unreasonable, the court concluded that the limitation was reasonable and enforceable. *Id.* at 106.[5] Therefore, under Michigan law, six month limitations in employment contracts are not *inherently* unreasonable. Rather, each limitation must be evaluated pursuant to the *Camelot* three-prong reasonableness test.

The Eastern District of Michigan, applying Michigan law, has found a six month limitation in an employment contract reasonable. In *Perez v. Western–Southern Life Ins. Co.*, No. 86–CV–40394–FL, 1987 WL 16355 (E.D.Mich. Jan.23, 1987), Plaintiff Peter Perez signed an employment contract with Defendant Western–Southern Life Insurance Company ("Western") that included a limitation on actions after six months of the date of employment termination. Western terminated Perez in May, 1984. *Id.* On July 8, 1986, Perez filed suit claiming that Western terminated his employment in violation of the Elliot–Larson Act. *Id.* The court granted Western's motion for summary judgment be-

cause, without much analysis, it found the six month limitation reasonable. *Id.*

Additionally, Defendant urges the Court to consider several unreported cases that found the specific six month limitation in DaimlerChrysler's employment contracts reasonable. *See Schoonover v. Daimler-Chrysler Corp.*, No.2000–670–CL (Macomb Cir. Ct. June 6, 2001); *Lamb v. Chrysler Corp.*, No. 00–CV–73796–DT (E.D.Mich. Oct. 30, 2001)(Cleland); *Cobb v. Daimler-Chrysler Corp.*, No. 01–036809–NO (Oakland Cir. Ct. Mar. 6, 2002); *Thomas–Underwood v. DaimlerChrysler Corp.*, No. 01–5253–NZ (Macomb Cir. Ct. Feb. 27, 2002).

■ Applying the Camelot test to this case, the six month limitation is reasonable. The first prong of the Camelot test requires sufficient opportunity to investigate and file the action. Since she, within six months, had sufficient opportunity to investigate and file her complaint with management, she likewise had sufficient opportunity to investigate and file a lawsuit within six months. Furthermore, Plaintiff asserts that she "discerned that there was a pattern and practice employed by DaimlerChrysler when women complained about sexual harassment" immediately after the incident involving Mr. Buzenbark. Resp. at 2. Therefore, she had the opportunity immediately following Mr. Buzenbark's harassment to file this lawsuit.

The second prong deems unreasonable any limitation which acts as a practical abrogation of the plaintiff's right of action. For example, in *Salisbury v. Art Van Furniture*, 938 F.Supp. 435, 437 (W.D.Mich. 1996), a six month limitation acted as an

---

**4.** The court cited M.C.L. 423.216(a) (unfair labor practices), M.C.L. 15.363(1) (Whistleblowers' Protection Act), and 9 U.S.C. 160(b) (unfair labor practices).

**5.** The court went on to hold that the employment contract was valid and enforceable since it did not lack consideration nor was it a contract of adhesion.

abrogation where the plaintiff could not legally file a lawsuit under the Americans with Disabilities Act until six months after she filed an administrative charge. In this case, there is no indication that Plaintiff could not have filed suit within six months of the sexual harassment. Therefore, the limitation does not abrogate Plaintiff's cause of action.

The third prong prohibits enforcement of a contractual limitation where the damages or loss could not be ascertained within the limitation period. Plaintiff's arguments as to why her damages could not be ascertained relate to her "tortious refusal to pay workers' compensation" claim, which is an invalid cause of action. *See* Part D, *infra*. She does not address how her damages from the sexual harassment could not have been ascertained. Moreover, there are no facts in the pleadings or her affidavit which would show why she could not ascertain her damages earlier.

Accordingly, Plaintiff has not carried her burden to show that the limitation is unreasonable.

### 2. The "Savings Clause" Included in the Contract

Plaintiff argues that if the savings clause in the contract is too vague to be enforced, the entire limitation is unenforceable, and relies on *Herweyer* for that proposition. Plaintiff, however, misconstrues *Herweyer*.

In that case, plaintiff Jack Herweyer was hired by defendant Clark Highway Services ("Clark") for seasonal road construction work. 564 N.W.2d at 857. Two years later, Clark asked Herweyer to sign an employment contract which included a clause limiting actions or suits to six months after the termination of employment. *Id.* at 858. It further stated: "I

agree to the above terms of employment. I agree that if any of the above commitments by me is ever found to be legally unenforceable as written, the particular agreement concerned shall be limited to allow its enforcement as far as legally possible." *Id.* This clause is commonly referred to as a "savings clause." In January, 1990, Herweyer was not asked to work the upcoming season, and in May, 1990, Clark informed Herweyer that Clark no longer employed him. *Id.*

Herweyer filed suit in December, 1992, alleging breach of contract, age discrimination, handicap discrimination and retaliatory firing. *Id.* Clark responded by moving for summary disposition, claiming that Herweyer's action was barred by the six month limitation. *Id.* Herweyer responded that the limitation was unreasonably short. *Id.* The Michigan Court of Appeals affirmed the trial court, which held that the savings clause required the plaintiff to file suit within a minimally reasonable time, and thirty-one months was an unreasonable delay. *Id.* Herweyer appealed to the Michigan Supreme Court.

■ The Michigan Supreme Court ruled that the savings clause was too vague to be enforced. *Id.* at 860. The court further held that when a savings clause is unenforceable, courts should revert to the statutory limitation, rather than deciding on an ad hoc basis a reasonable time to bring suit. *Id.* Thus, the limited holding in Herweyer is only that "[c]ourts should defer to the statutory period unless the period in the parties' contract is specific and reasonable." *Id.* at 861. The court did not state or imply that the entire contractual provision limiting actions to six months was void because of the vague savings clause.[6] Therefore, Plaintiff's argument that the

---

**6.** The court also explicitly stated that it did not offer any opinion on the reasonableness of the six month limitation.

present limitation is void because of a vague savings clause is misplaced.

### 3. Violation of Public Policy

Plaintiff argues that the six month limitation violates Michigan public policy for three reasons. First, Plaintiff argues that the legislative intent of the Elliot–Larson Act was to expand the rights of a person to pursue remedies in the courts and not to restrict such rights. Allowing a shortened limitation period, she argues, would restrict her rights. This argument is without merit, however, because by enforcing the six month limitation, the court is not construing the Elliot–Larson Act. Rather, the court is construing the employment contract. It is the contract that is restricting Plaintiff's ability to sue, not the Elliot–Larson Act.

█ Second, Plaintiff argues that Michigan public policy favors direct and immediate access to the courts for plaintiffs making civil rights claims, and the six month limitation prevents such access. This argument is unconvincing because it cuts against the Plaintiff's own position. A shortened limitations period *encourages* immediate access to the court. The policy supporting any limitation is to encourage the prompt bringing of claims to prevent unfairness to the defendant, loss of evidence, and the fading of witnesses' memories. *Missouri, Kansas, & Texas Ry. Co. v. Harriman Brothers*, 227 U.S. 657, 672, 33 S.Ct. 397, 57 L.Ed. 690 (1913); *MFS Int'l, Inc. v. Int'l Telcom Ltd.*, 50 F.Supp.2d 517, 521–22 (E.D.Va.1999). Therefore, a shorter period of limitation furthers the goal of promptness in bringing actions before the court. *See, e.g. Missouri, Kansas, & Texas Ry. Co.*, 227 U.S.

at 672, 33 S.Ct. 397 (reasoning that contractual limitations that shorten statutory limitations do not violate public policy because the policy of statutes of limitations is to encourage promptness in bringing the action, and shorter contractual limitations further the same goal).

█ Third, the Michigan Court of Appeals has adopted the position that shortened periods of limitations for suits under the Elliot–Larson Act do not contravene public policy. The *Timko* court agreed with the Sixth Circuit that

[t]hough the three-year period of limitations for injuries to a person under M.C.L. § 600.5805(7) [MSA 27A.5805(7) ] is applicable to employees alleging discrimination in employment practices, ...there is nothing in either the Elliot Larsen Act or Sec. 800.5805(7) which prohibits a shorter reasonable period agreed upon by the parties nor which evinces any state public policy to the contrary.

*Timko*, 625 N.W.2d at 105, *quoting Perez v. Western–Southern Life Ins. Co.*, 1987 WL 16355 at *2 (E.D.Mich.1987). *See also Myers*, 849 F.2d at 261–62. Thus, public policy does not prevent the Court from enforcing the limitation.[7]

### B. Plaintiff's Satisfaction of the Six Month Limitation

Plaintiff argues that even if the six month limitation is enforceable, she satisfied the limitation in either of two ways. First, Plaintiff argues that the "continuing violation" doctrine applies to this case. Alternatively, Plaintiff maintains that the term "claim" should be construed broadly

---

7. During oral argument, Plaintiff's attorney made an additional argument that she did not present in her brief. In essence, she argues that the limitation in the employment application is not enforceable because she was terminated and rehired, and did not skin another application when she was rehired. This argument is unpersuasive because the terms of an employment application govern the ongoing employment *relationship* between the parties.

enough to include her complaints to management and her union.

### 1. Continuing Violation Doctrine

 The continuing violation doctrine permits a plaintiff to allege events outside of a time limitation on actions, if the events are part of an ongoing policy of discrimination, and if that policy operates within the limitations period. *Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 398 N.W.2d 368 (1986). Under this doctrine, "[d]iscriminatory policies can constitute present violations of these statutes each moment they are in effect." *Id.* at 381. The court should apply the continuing violation doctrine only if Plaintiff has demonstrated a discriminatory policy or course of conduct. *Id.* at 378. When determining if incidents of harassment constitute a policy, the court should consider the frequency of the incidents, whether the incidents involve the same type of discrimination, and whether the incidents indicate a degree of permanence that should alert the plaintiff to assert her rights. *Id.* at 382, Furthermore, "the plaintiff must show that at least one discriminatory act took place within the limitations period." *Id.*

 Applying the three factors above, Plaintiff has not produced sufficient evidence to show a discriminatory policy. The first factor is frequency. Plaintiff complains of two incidents, one year apart. In other cases where a plaintiff argued that a policy of discrimination constituted a continuing violation, courts required more than two incidents. In *Joseph v. Dept. of Corrections*, No. 216509, 2000 WL 33418085 (Mich.App. June 23, 2000), the court found that two incidents of harassment three years apart were isolated to constitute a discriminatory policy. However, in *Meek v. Michigan Bell Telephone Co.*, 193 Mich.App. 340, 483 N.W.2d 407 (1991), plaintiff claimed at least eleven harassing occurrences within a seven year period. The court found a policy of discrimination and accordingly applied the continuing violation doctrine. *See also Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir.1999) (holding that numerous racist comments over several years satisfied the requirements for the continuing violation doctrine); *Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220 (6th Cir.1991) (holding that six incidents of racial discrimination over a nine year period did not constitute a policy of discrimination, and therefore the application of the continuing violation doctrine was Inappropriate).

In this case, Plaintiff pleads that Defendant transferred her twice when she complained of sexual harassment, and asks the court to infer a policy from those events. Moreover, Plaintiff claims that her first complaint against Chris Buzenbark resulted in Defendant transferring him, which undercuts Plaintiff's theory that Defendant has a policy of always transferring the complainers of sexual harassment complaints. Therefore, Plaintiff has not shown sufficient frequency.

The second factor refers to similarities between the occurrences. Here, the two occurrences are similar, but this factor is not enough to outweigh the first and third.

The third factor focuses on notice to the plaintiff. Where the type of discrimination is of a permanent nature that should put the plaintiff on notice that she should pursue legal recourse, application of the continuing violation theory is inappropriate. Plaintiff was aware of the harassment by her supervisors as well as aware that she was transferred soon after complaining to management. *See Joseph v. Dept. of Corrections*, No. 216509, 2000 WL 33418085 (Mich.App. June 23, 2000) (reasoning that because the plaintiff reported his harassment to his department supervisor, he must have been aware of her injuries, and

therefore the third factor of lack of notice was not met); *Smith v. Asphalt Specialists, Inc.*, No. 190555, 1997 WL 33344052 (Mich.App. Oct. 17, 1997) (rejecting the continuing violation doctrine in a sexual harassment lawsuit because Plaintiff knew of the harassment when it occurred and could have filed a timely claim at that time).

Furthermore, even if the court does infer a policy of discrimination based on the two incidents, Plaintiff has not shown that "at least one discriminatory act took place within the limitations period." *Sumner*, 398 N.W.2d at 382. Therefore, the continuing violation doctrine is not applicable to this case.

### 2. Construction of the Word "Claim"

Plaintiff also contends that she satisfies the contractual limitation on actions because she complained to management within six months of the harassment. She distinguishes the present case from others in which courts have enforced a six month limitation on actions because the other contracts referred to an "action or suit," whereas Plaintiff's contract refers to any "claim or lawsuit." Plaintiff argues a significant difference between the terms "action" and "claim," in that "action" refers to a lawsuit but "claim" includes any demand to one's right or ownership in something. According to Plaintiff's usage of the term "claim," her complaint to management is a "claim." However, the contract is unambiguous and the plain language of the contract contradicts Plaintiff's broad understanding of a "claim."

■■■■ The question of whether a contract is ambiguous is a question of law for the court. *Steinmetz Elec. Contractors v. Local Union No. 58* 517 F.Supp. 428, 432 (E.D.Mich.1981); *Mayer v. Auto-Owners Ins. Co.*, 127 Mich.App. 23, 338 N.W.2d 407, 409 (Mich.App.1983). Construction of a contract, whether it is ambiguous or

unambiguous, also is a question of law for the court. *Petovello v. Murray*, 139 Mich. App. 639, 362 N.W.2d 857, 858 (1984): *Fragner v. American Community Mut. Ins., Co.*, 199 Mich.App. 537, 502 N.W.2d 350, 352 (1993).

■■■■ A contract which admits of but one interpretation is unambiguous. *Fragner*, 502 N.W.2d at 352. In contrast, a contract provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. *Petovello*, 362 N.W.2d at 858.

■■■■ If a contract is clear and unambiguous, the court must enforce the contract as written, according to its plain meaning, *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 505 N.W.2d 553, 557 (1993), without looking to extrinsic evidence. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 476 N.W.2d 392, 396 n. 6 (1991). It is improper for the court to ignore the plain meaning of the policy's language in favor of a technical or strained construction. *Arco Indus. Corp. v. Travelers Ins. Co.*, 730 F.Supp. 59, 66 (W.D.Mich.1989).

■■■■ In this case, the contract language is unambiguous as to whether "claim" includes filing a complaint with management. The relevant portion of the contract states: "While I understand that the **statute of limitations for claims** arising out of an employment action may be longer than six (6) months . . . ." Def. Exhibit A (emphasis added). There is no *statutory* limitation on complaints filed internally within a company. Plaintiff's interpretation of the term "claim" does not make sense when reading the paragraph as a whole. Therefore, Plaintiff's complaints to management are not "claims" under the contract.

### C. Timing of Defendant's Motion

Plaintiff argues that the present motion for summary judgment is premature.

Since this motion is Defendant's first response to Plaintiff's complaint, Plaintiff maintains that she is prejudiced by lack of discovery.

 FED. R. CIV. PRO. 56(b) provides: "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, *at any time,* move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." (Emphasis added.) If the party opposing summary judgment is unable to respond to the motion. FED. R. CIV. PRO. 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Thus, Plaintiff bears the burden to show, by affidavit, how postponement will enable her to rebut Defendant's showing of the absence of a genuine issue of fact. *Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir.1989). After the parties filed their briefs for this motion, they submitted affidavits and exhibits which show a dispute over Defendant's productions of Plaintiff's personnel file. Plaintiff would like the Court to infer that this denial of her request for her file has prejudiced her ability to prepare her case. In order for this argument to prevail, Plaintiff must explain in an affidavit how anything in her file would be material to the issues of the six month limitation or a continuing violation.

Plaintiff submitted her own affidavit, but it falls to show how review of her file would enable her to support any relevant argument. For example, her affidavit states that her personnel files would show that she immediately filed complaints against Juan and Chris Buzenbark. As discussed above, however, the internal complaints are not "claims" so their timing is irrelevant to whether she filed a claim or lawsuit within six months. Lastly, Plaintiff contends that she does not recall signing the employment application and does not know if it came from her personnel file. However, Plaintiff did attach a copy of the application to her Response as Exhibit 4, and it clearly shows Plaintiff's signature. Unless she alleges some sort of fraud or forgery, which she has not, her inspection of the original application will not reveal anything to overcome the six month limitation it contains.

On August 27, 2002, Defendant delivered Plaintiff's personnel file to her attorney.[8] Though the delivery was after all briefs for this motion were filed, Plaintiff did have the opportunity to review the file's contents prior to oral argument. Therefore, Plaintiff had the opportunity to present to the Court any factor in her file relevant to the six month limitation issue, but she was unable to do so. Accordingly, Plaintiff has failed to show how additional discovery is necessary before the Court rules on Defendant's motion.

### D. Plaintiff's "Tortious Refusal to PayWorkers' Compensation Benefits" Claim

 Plaintiff's third count of her complaint alleges tortious refusal to pay workers' compensation benefits. Specifically, Plaintiff claims that Defendant conspired to pay her Sickness and Accident benefits instead of workers' compensation benefits for her disability arising out of the sexual harassment. Compl. ¶¶ 59–80. Plaintiff maintains that workers' compensation ben-

---

**8.** The Court heard oral arguments on September 5, 2002.

efits are higher than Sickness and Accident benefits. Resp. at 3. Furthermore, Plaintiff submits that Defendant "puts all employers [sic] who have job related injuries on less expensive 'Sickness and Accident' status, rather than providing them with Workers [sic] Compensation benefits." Resp. at 11. Finally, Plaintiff states that "[u]nder Michigan law, denial of Worker Compensation [sic] benefits is tortuous [sic]." [9]

Plaintiff's statement implies that an employer commits a tort simply by denying an employee's workers' compensation claim, and that Defendant denied her claim when it placed her in its Sickness and Accident benefit program. There is no evidence, however, that Defendant intended to *substitute* one benefit program for the other. Moreover, because of the contractual nature between Defendant and its employees represented by collective bargaining units, it is improbable that Defendant has a policy to deny hourly employees workers' compensation claims and place them in its Sickness and Accident plan instead. Additionally, the denial of workers' compensation benefits, even in bad faith, is not tortious. Other lawsuits against employers and insurance companies for canceling or refusing to pay insurance benefits are brought as intentional infliction of emotional distress claims. In that context, courts hold that "wrongful, bad faith termination of benefits is not

sufficiently outrageous to support a claim for intentional infliction of emotional distress." *Atkinson,* 431 N.W.2d at 97. *See also Folts v. Cigna Insurance Co.,* No. 210163, 1999 WL 33438012 (Mich.App. Aug.6, 1999); *Hailes v. Liberty Mutual Insurance Co.,* No. 215509, 1999 WL 33326762 (Mich.App. Dec.28, 1999). Therefore, wrongful, even *bad faith* refusal to offer benefits to which Plaintiff is entitled is not tortious.

## V. Conclusion

For the foregoing reasons, Defendant's motion is GRANTED.

---

**9.** No such cause of action exists. No reported case in Michigan, or in any other jurisdiction, mentions such a claim. Plaintiff cites two cases to support her assertion that the cause of action exists. However, neither case actually supports her contention. In *Broaddus v. Ferndale Fastener Division,* 84 Mich.App. 593, 269 N.W.2d 689 (1978), the plaintiff, an injured employee, sued his employer. Its workers' compensation carrier and its other insurance carrier for "acting in collusion to deny benefits for a compensable injury." In analyzing the legal issue involved in the case, the court construed the action as one for the

intentional infliction of emotional distress by wrongfully denying benefits. *Id.* at 692.

Similarly, Plaintiff's second cited case, *Atkinson v. Farley,* 171 Mich.App. 784, 431 N.W.2d 95 (1988), involves a claim for intentional infliction of emotional distress, not tortious refusal to pay workers' compensation benefits. Defendant's repeated direct contacts with the plaintiff who was represented by counsel, and the groundless demands for repayment of money formed the basis of the intentional infliction of emotional distress claim.